232 N.J. Super. 219 (1989)
556 A.2d 1255
TOWNSHIP OF NORTH BERGEN, AND TOWN OF SECAUCUS, PLAINTIFFS-APPELLANTS, AND NORTH BERGEN BOARD OF EDUCATION, PLAINTIFF,
v.
CITY OF JERSEY CITY, HUDSON COUNTY BOARD OF TAXATION AND NEWPORT CITY DEVELOPMENT CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 3, 1989.
Decided April 13, 1989.
*220 Before Judges SHEBELL, GRUCCIO and LANDAU.
Alan J. Karcher argued the cause for appellant Township of North Bergen (Karcher, McDonnell, Rainone & Aftanski, attorneys, Alan J. Karcher and Louis Rainone on the brief).
*221 Frances C. Holland argued the cause for appellant Town of Secaucus (Holland & Holland, attorneys).
Joanne Monahan argued the cause for respondent City of Jersey City (Thomas Fodice, attorney, Joanne Monahan and Marta T. Baez, on the brief).
Richard L. Evert argued the cause for respondent Hudson County Board of Taxation (Cary Edwards, Attorney General, attorney, Benjamin Clarke of counsel, Richard L. Evert on the brief).
William J. Heller argued the cause for respondent Newport City Development Company (Hannoch Weisman, attorneys, Carmine A. Iannoccone and Shirley L. Berger, on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
Plaintiffs-appellants, the Township of North Bergen (North Bergen) and the Town of Secaucus (Secaucus), appeal from the entry of summary judgment in favor of the defendants-respondents, the City of Jersey City (Jersey City), Newport City Development Company (Newport) and the Hudson County Board of Taxation (Board).
Newport, a limited partnership, is developing a large previously blighted area on the Jersey City waterfront. It applied to Jersey City for a tax abatement on Phase I of the proposed development, a 1500 residential rental unit, offering to set aside 270 units (18%) for moderate income families at an estimated annual loss of revenue of $3,000,000, in exchange for exemption from local property taxes for 40 years. Tax abatement for a limited period of time is authorized under N.J.S.A. 55:14K-37(b). Newport proposed to pay to Jersey City a yearly service charge of approximately $1.3 million in lieu of local taxes. (Plaintiffs allege that without the exemption Newport would have to pay between $4,000,000 and $6,000,000 per year in local property taxes.)
*222 The Jersey City Municipal Council (the Council) reviewed the application on October 21 and October 25, 1985. On October 28 and November 1, 1985, the Council met to consider the abatement application. These meetings were open to the public Prior to the meetings the Secretary of the Tax Abatement Committee for Jersey City gave notice in the Jersey Journal and the Hudson Dispatch in accordance with N.J.S.A. 10:4-6 et seq. The Council adopted Resolution C-360 on November 1, 1985, granting Newport a tax abatement pursuant to N.J.S.A. 55:14K-37(b) and upon execution of a tax abatement agreement authorized thereunder.
Newport then entered into financing agreements for $150,000,000 with the New Jersey Housing Mortgage and Finance Agency (the Agency), covering Phases I and II. Their supplemental letter-contract dated December 24, 1985, incorporated a copy of "Rules" regarding the rate of return on equity. The agreement provided in pertinent part:
The rate of return on equity permitted annually shall be calculated in accordance with Subchapter 3 of the Agency's Rules and Regulations, attached hereto as Exhibit A. Furthermore, subject to approval by the Agency Members, these rules and regulations will be conformed to the policies and procedures for CCRC's [Continuing-Care Retirement Communities] regarding return on equity approved by the Agency on May 23, 1985, a copy of which is attached hereto as Exhibit B.
The Exhibit A rule had been proposed for adoption, 17 N.J.R. 505(a) (March 4, 1985), but then withdrawn by the Agency, 17 N.J.R. 1258(b) (April 29, 1985). A new rule, however, was formally adopted shortly thereafter, utilizing the same rate of return formula agreed to by Newport.
North Bergen, its Board of Education and Secaucus challenged the propriety of the tax abatement by Filing actions in lieu of prerogative writ in the Law Division, but defendants' motion for summary judgment was granted following extended arguments.
In these consolidated appeals, North Bergen and Secaucus urge that the trial court erred in determining that granting a tax abatement to Newport by resolution was proper, that the *223 abatement violates Article VIII, Section 3, Paragraph 1 of the Constitution of the State of New Jersey because Newport's profits and dividends are not limited by law, that the full value of all improvements made by Newport should be included in county and state equalization tables, and that N.J.S.A. 55:14K-37(b) is unconstitutional because it improperly delegates taxing power to municipalities and authorizes arbitrary allotment of tax revenue.

I.

RESOLUTION vs. ORDINANCE
Appellants assert that it was improper for Jersey City to grant Newport a tax abatement by resolution. N.J.S.A. 55:14K-37(b) provides in pertinent part:
The governing body of any municipality in which a housing project financed or to be financed by the agency is or is to be located may by ordinance or resolution, as appropriate, provide that such project shall be exempt from real property taxation, if the housing sponsor enters into an agreement with the municipality for payments to the municipality in lieu of taxes for municipal services. (emphasis added).
Appellants claim that the words "as appropriate" as used in N.J.S.A. 55:14K-37(b) required Jersey City to adopt an ordinance when granting the present tax abatement, as determined by "the character of the municipal action contemplated."
We have considered whether the appellants have standing to question Jersey City's grant of a tax abatement by resolution rather than by ordinance. Neighboring municipalities are not ordinarily aggrieved by the extent of formality whereby another municipality enacts a measure. Appellants' real objection is to the underlying grant of the abatement, and not to the actual mechanism by which it was granted. We recognize, however, that when an important public interest is involved even a slight private interest is sufficient to give standing. See Elizabeth Federal S. & L. Assn. v. Howell, 24 N.J. 488, 499 (1957); Booth v. Township of Winslow, 193 N.J. Super. 637, 639-640 (App.Div. 1984), cert. den. 469 U.S. *224 1107, 105 S.Ct. 781, 83 L.Ed.2d 776 (1985). As litigants with limited private interests are afforded standing to test matters of public importance, these public litigants who are affected by the action of another public entity should not be denied a judicial forum to air their objections.
N.J.S.A. 40:49-1 defines ordinance as "any act or regulation of the governing body of any municipality required to be reduced to writing and read at more than one meeting thereof and published," and resolution as "any act or regulation of the governing body of any municipality required to be reduced to writing, but which may be finally passed at the meeting at which it was introduced." Usually an ordinance is a legislative act (general or permanent in nature), and a resolution is ministerial in character (administrative, procedural, or temporary in nature or effect). Albigese v. Jersey City, 129 N.J. Super. 567, 569 (App.Div. 1974); Woodhull v. Manahan, 85 N.J. Super. 157 (App.Div. 1964), aff'd 43 N.J. 445 (1964). An ordinance is considered to be more solemn or formal than a resolution. See Chasis v. Tumulty, 8 N.J. 147 (1951); 5 McQuillan, Municipal Corporations § 15.02 at 37 (3 ed. 1973). While not an insurance against local maladministration, action by ordinance is a "reflective process that affords an opportunity for expression of public opinion." McQuillan, supra, § 15.01 at 34 (citing Samuel v. South Plainfield, 136 N.J.L. 187 (E & A 1947)).
It is well-settled that where a statute does not expressly require action by ordinance or resolution, the power may be exercised by either means. See Fraser v. Township of Teaneck, 1 N.J. 503, 507 (1949); Tumulty v. Jersey City, 57 N.J. Super. 503, 514 (App.Div. 1959); McLaughlin v. City of Millville, 110 N.J. Super. 200, 209 (Law Div. 1970). Had the Legislature intended abatements be granted by ordinance under certain circumstances and by resolution under other circumstances, it could simply have set forth specific standards. See, e.g., N.J.S.A. 39:4-197 (detailing what motor vehicle and traffic regulation *225 must be exercised by ordinance, which by ordinance or resolution, and which by ordinance, resolution or regulation).
As noted in McQuillan, supra, § 15.02 at 38-39:
Generally, whether what is done by a municipal legislative body is an ordinance or a resolution depends not on what the action is called but on the reality. Thus the mere doing of a particular thing in the form of an ordinance does not necessarily constitute it an ordinance; in other words, acting by ordinance rather than by resolution does not necessarily constitute municipal legislation. Conversely, where a resolution is in substance and effect an ordinance or permanent regulation, the name given to it is immaterial.
Here, the steps taken in passing the resolution at issue substantially paralleled an exercise of power by ordinance. The tax abatement was discussed and debated at two public meetings, was publicized in two local newspapers, and received the overwhelming support of the Mayor of Jersey City indicating that he would not have vetoed the proposal. The Mayor's support was echoed by the municipal attorney at oral argument. The Council did not covertly adopt this measure; nor did the procedures used deny opportunity for the public notice and reflection inherent in use of an ordinance.
Appellants urge that the term "as appropriate" used in N.J.S.A. 55:14K-37(b) requires that substantial tax abatements be granted by ordinance, while smaller tax abatements may be granted by resolution. We disagree. The action of the municipality is the same regardless of the size of the abatement. The power being exercised must dictate which device is appropriate. See Albigese, 129 N.J. Super. at 569; McQuillan, supra, § 15.02 at 38. Unquestionably, it is desirable that an enactment as important as this abatement be supported fully by both Mayor and Council, and fully communicated in advance to the constituency. This having been done, we decline to interpret the statute so as to render the words "or resolution" meaningless.
Appellants also complain that Jersey City's use of a resolution deprived its electorate of an opportunity for a referendum under N.J.S.A. 40:69A-185. We disagree. Nothing precluded a referendum in the instant matter, assuming arguendo that *226 the grant of a single tax abatement is properly deemed legislative in character. See Cuprowski v. Jersey City, 101 N.J. Super. 15, 22-23 (Law Div. 1968), aff'd 103 N.J. Super. 217 (App. Div. 1968), certif. den. 53 N.J. 80 (1968). See also Lawrence v. Schrof, 162 N.J. Super. 375, 380-381 (Law Div. 1978). In Cuprowski, the court stated:
Municipal corporations have both legislative and administrative powers. These powers are vested in the governing body and are exercised through resolution or ordinance. The referendum provisions have been held applicable to all ordinances and resolutions which constitute an exercise of the legislative power. An act purely executive or administrative in character is not an exercise of legislative power and therefore is not subject to recall by referendum. This holds true regardless of whether the act is nominally designated a resolution or an ordinance. Therefore, it would appear that in stating that all ordinances should be subject to the referendum provisions of N.J.S.A. 40:69A-185 the Legislature was referring to ordinances of a legislative nature and did not intend to include resolutions or ordinances of an executive or administrative nature. [Cuprowski, 101 N.J. Super. at 22-23 (citations omitted).]
See also Menendez v. City of Union City, 211 N.J. Super. 169, 172 (App.Div. 1986). While Jersey City's grant of the exemption was of enormous importance, it was a single transaction with one group, upon which substantial commitments were based. It was not a law of general applicability and indefinite effect. Under Cuprowski, if this was basically a legislative action a public referendum would have been available if properly initiated under N.J.S.A. 40:69A-184 et seq., regardless of whether a resolution or ordinance was employed. Conversely, if the abatement was not a legislative action a referendum would not be permitted. Either way, the public has not been deprived of opportunity for a referendum by use of a resolution, rather than an ordinance.

II.

PROFIT LIMITATIONS
Article VIII, Section 3, Paragraph 1, of the New Jersey Constitution provides in pertinent part:
The clearance, replanning, development or redevelopment of blighted areas shall be a public purpose and public use, for which private property may be taken or acquired. Municipal, public or private corporations may be authorized *227 by law to undertake such clearance, replanning, development or redevelopment; and improvements made for these purposes and uses, or for any of them, may be exempted from taxation, in whole or in part, for a limited period of time during which the profits of and dividends payable by any private corporation enjoying such tax exemption shall be limited by law. The conditions of use, ownership, management and control of such improvements shall be regulated by law. (emphasis added).
Newport entered into financing agreements for $150,000,000 with the Agency on December 1, 1985. As noted above, profit and dividend limitations were contained in the rules incorporated by reference in Newport's supplemental letter agreement with the Agency. Appellants argue that Newport's tax exemption is constitutionally deficient under Article VIII, Section 3, Paragraph 1 of the New Jersey Constitution as violative of its profit and dividends limitation requirement.
We disagree. N.J.A.C. 5:80-3.3,[1] promulgated in September 1987 pursuant to the grant of authority under N.J.S.A. 55:14K-7(a)(6), is presumptively valid. It limits the return on *228 equity for all loans "made by the Agency on or after January 17, 1984." Newport, as a housing sponsor after January 17, 1984, is bound by this provision. Further, by Section 14 of its Financing, Deed Restriction and Regulatory Agreement dated December 1, 1985, it agreed to "comply with the Act [New Jersey Housing and Mortgage Finance Agency Law of 1983 and its amendments] and the Agency's Rules and Regulations." Thus, Newport was also contractually bound to comply with the subsequently adopted rule. Finally, the December 24, 1985 letter agreement specifically bound Newport to the same regulated *229 rate of return. N.J.S.A. 55:14K-7(a)(6) requires the housing sponsor to agree to be bound by the rate of return as shall be fixed from time to time by the Agency in its regulations as a condition for making a loan. Violation of such contracts by the housing sponsor is a crime. N.J.S.A. 55:14K-7(a)(6).
In short, regulations incorporated by reference in Newport's agreement controlled Newport's profit from the outset. They are substantially the same as the later adopted Agency regulations. Both formulas limit Newport to an 11.67% annual return on equity.
Where an agency is making good faith attempts to develop a uniform regulation, case-by-case proceedings until suitable rules are adopted should not automatically be considered abuses of discretion. See State, Dept. of Envir. Protection v. Stavola, 103 N.J. 425, 436-437 (1986); Department of Labor v. Titan Const. Co., 102 N.J. 1, 16 (1985). Compare Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313 (1984) with SEC v. Chenery Corp., 332 U.S. 194, 202, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995, 2002 (1947) (allowing case-by-case adjudication in limited situations). Here, of course, there was no adjudication, but Newport was contractually bound to a profit limitation identical with the regulation later adopted, and that regulation was itself retroactive in application. This was a suitable method of operation pending adoption of the governing regulations.
We conclude that the trial court properly determined that Newport's return on equity is not only limited by valid agency regulation, but also by legally binding agreement. Therefore, the grant of the tax abatement to Newport was not constitutionally defective under Article VIII, Section 3, Paragraph 1 of the New Jersey Constitution.

III.

OTHER ISSUES
The appellants urge that the value of the Newport property should be included in the county and state equalization tables. *230 N.J.S.A. 54:3-17; N.J.S.A. 54:4-48 to -52. They also say that N.J.S.A. 55:14K-37(b) is unconstitutional because it has the effect, indirectly, of improperly delegating authority to Jersey City to tax North Bergen and Secaucus without representation, and of authorizing arbitrary allotments of tax revenue.
These claims are clearly without merit. R. 2:11-3(e)(1)(E). We affirm the Law Division's determination concerning these issues for substantially the reasons expressed by Judge Humphreys in his letter opinion of March 6, 1987.
We add that the Legislature has clearly expressed an intention to exclude the value of such tax exempt improvements from county and state equalization tables. N.J.S.A. 55:14K-37(b) states that a municipality can provide that a housing project "shall be exempt from real property taxation." Article VIII, Section 3, Paragraph 1 of the New Jersey Constitution provides that such improvements "may be exempted from taxation, in whole or part." N.J.S.A. 54:4-52(15) provides that property exempt from taxation should be listed separately on the table of aggregates for the county.
In interpreting these provisions, we must consider recent statutory history. When the Legislature created the New Jersey Housing and Mortgage Finance Agency in 1983, the new statute, N.J.S.A. 55:14K-1 et seq., conspicuously omitted the following language from the predecessor legislation:
For purposes of apportioning the amounts to be raised in the respective municipalities in each county pursuant to section 54:4-49 of the Revised Statutes, the county board of taxation shall, for each municipality include in the equalization table for the county the assumed assessed value of the property represented by the amount of payments in lieu of property taxes to any municipality pursuant to this act. [L. 1967, c. 81, § 30, N.J.S.A. 55:14J-30 (repealed by L. 1983, c. 530, § 48 (Jan. 17, 1984)).]
As the trial judge stated: "The obvious inference from that omission is the Legislature believed that the payments for certain municipal services should not be [capitalized and] included as part of a municipality's ratable wealth for county tax purposes." Compare N.J.S.A. § 55:14K-1 et seq. with N.J.S.A. *231 55:14J-30 (repealed 1984). This conclusion is also consistent with the Legislature's deletion of an earlier requirement that municipal service charges under the Urban Renewal Corporation and Association Act (N.J.S.A. 40:55C-65) (Fox-Lance Laws) be capitalized and included in the county table of aggregates. This change became effective six months before the parallel omission in N.J.S.A. 55:14K-1 et seq. of like requirements contained in the excluded N.J.S.A. 55:14J-30 (repealed 1984). See Senate County and Municipal Government Committee Statement, S. No. 1561, L. 1983, c. 258 (reprinted in the Annotations following N.J.S.A. 40:55C-65).
There is a strong presumption favoring the constitutionality of a statute. N.J. Sports & Exposition Authority v. McCrane, 61 N.J. 1 (1972), app. dism. 409 U.S. 943, 93 S.Ct. 270, 34 L.Ed.2d 215 (1972). We disagree with appellants' contentions that N.J.S.A. 55:14K-37(b) improperly delegates taxing authority and permits taxation without representation. A municipality is permitted to grant a tax exemption only to a "housing project financed or to be financed by the [Housing Mortgage & Finance Agency]." N.J.S.A. 55:14K-37(b). Thus, that state agency actually controls whether an abatement can be granted. Moreover, a statute's disproportionate tax effect on particular municipalities does not make it constitutionally deficient. See City of Trenton v. Mercer Cty. Bd. of Taxation, 155 N.J. Super. 181, 183, 185 (App.Div. 1977). Capitalization of some revenue sources, but not others is permissible so long as "the capitalization of any given revenue source [is] performed for each municipality in an identical manner." Id. at 185. The exclusion of revenue received by municipalities by way of service charges under N.J.S.A. 55:14K-37(b) from county and state equalization tables applies equally to all municipalities. True, the amount actually excluded from the tables may vary by municipality. The Legislature, however, has wide discretion in allocating the burdens of government. It has plainly and unmistakably here exercised that discretion. Absent a constitutional or legal error, it is not the judicial function to review the *232 societal merit of a legislative program which may sacrifice some tax revenue for another perceived public objective.
Affirmed.
NOTES
[1] N.J.A.C. 5:80-3.3 provides:

(a) For each eligible loan made by the Agency on or after January 17, 1984 for a Housing Project, the Agency shall determine, at the time of initial mortgage closing, the investment made by the Housing Sponsor.
1. Investment shall include:
i. Actual cash or cash equivalent as determined by the Agency;
ii. Professional fees pledged toward approved project cost;
iii. Any grants and/or loans procured by the Sponsor to the extent they are applied to Agency approved project costs and to the extent they are not repayable from project funds;
iv. Any additional cash contributions made by the Housing Sponsor subsequent to initial closing if such contributions were utilized for project costs approved by the Agency.
2. Increases in project value, as determined by an Agency approved appraisal, may also be recognized as part of this investment.
3. The Housing Sponsor shall be entitled to return on its investment except for funds procured through grants or loans at rates established in accordance with (b) below. It shall earn a return on any cash portion of its investment from the date it is actually contributed and on the non-cash portion of its investment from the date it is utilized towards approved project costs.
(b) For Housing Projects which receive a loan from the Agency on or after January 17, 1984, the Agency shall fix, at the time of the making of the loan, the rate of return which may be earned or received by the Housing Sponsor on its investment on a cumulative but not compounded annual basis from the development, operation, sale, assignment or lease of the Housing Project according to the following schedule:
1. The Base Rate to be used in calculating the return on equity pursuant to 2 through 6 below, shall be equal to the rate being paid on 30-year treasury bonds at the time of the mortgage closing. This Base Rate will be determined by the Agency in its sole discretion using any reasonable source of information;
2. For units occupied by individuals or families who at the time of occupancy have a household income which is less than 50 percent of the median income for the area in which the project is located, the annual rate of return on investment may not exceed the then applicable base rate plus six percent;
3. For units occupied by families or individuals who at the time of occupancy had a total household income of less than 80 percent of the median income for the area, the annual rate of return on the investment may not exceed the base rate plus four percent;
4. For all other units financed by the Agency, the annual rate of return on investment may not exceed the base rate plus two percent;
5. For developments which have a mix of units serving populations with an assortment of income ranges, the Agency shall determine the limit on the rate of return which may be earned by the Housing Sponsor by prorating the rate of return based upon the number of units devoted to the various income levels;
6. If the Agency determines that as a result of restrictions on development costs, rents or other factors, that the actual amount of return on equity which can be paid in any year will be significantly below that allowed by the Agency pursuant to 2 through 5 above, the Agency may set a return on equity limit which may be paid or earned on an annual, cumulative but not compounded basis, not to exceed the base rate plus 10 percent.