PER CURIAM.
The Legislature enacted a tax abatement statute, N.J.S.A. 54:4— 3.139 to -3.149, in order to stimulate the construction of private businesses and homes in areas designated as “Urban Enterprise Zones.” See N.J.S.A. 54:4-3.139(a)-(m). This legislation authorizes the governing body of a city containing an Urban Enterprise Zone to grant tax abatements with respect to new construction. N.J.S.A. 54:4-3.142. Pursuant to this enabling legislation, the City of Newark enacted an ordinance permitting tax abatements for the construction of new one to four family “residential structures.” Newark, N.J., Rev. Ordinances, Tit. 10, ch. 15, §§ 1-12 (1990) (hereinafter N.R.O.).
Plaintiffs each purchased newly constructed two-family homes from the same builder. The planning board had granted site plan approval for the construction of two-family homes containing three floors. The architectural plans indicated that the second and third floors would be separate apartment units and that the first floor would be an unfinished basement with a garage, a hallway for two washers and dryers, a closet for two hot water heaters, and a “recreation room with empty space, no walls.” Although the builder had not completed all construction by the scheduled closing dates, plaintiffs still closed. An addendum to the contracts of sale was drafted at closing, under which the builder promised to complete certain additional work, including improvements to the basement, within 30 days. However, the builder only obtained certificates of occupancy for two-family homes with unfinished basements.
Plaintiffs each applied for tax abatements pursuant to N.R.O. 10:15-1 to -12 within 30 days of the completion of construction, as required by N.R.O. 10:15-4(a). Before acting upon plaintiffs’ applications,, Newark conducted inspections of their homes, which revealed that the basements had been finished with a bathroom, kitchen and partitions forming separate rooms. Newark then alleged that these improvements had illegally transformed the two-family homes into three-family homes. Following the inspections, Newark issued notices of violations of the building code to *243 each of the plaintiffs. These notices alleged that the construction in the basement was done without proper building permits and that the resulting construction created an improper change of use.
Following the notices of violation, the Department of Law for Newark sent letters to plaintiffs denying their tax abatement applications “[b]ased upon the change of use violation issued against [the] property.” Plaintiffs thereafter submitted appropriate permit applications, paid a fine and permit fees, hired an architect and had their homes reinspected. The Building Department issued permits for the basement improvements after plaintiffs agreed to sign affidavits promising to use the buildings only as two-family homes. Despite curing the building code and zoning violations, plaintiffs still were not granted tax abatements.
Plaintiffs then filed this action in lieu of prerogative writs seeking to reverse the denial of their tax abatement applications and to set aside the tax assessments upon their properties. During the pendency of this action, plaintiffs also filed appeals to the Essex County Board of Taxation, which entered judgments affirming the assessments. Plaintiffs did not appeal from those judgments but instead continued to pursue this action in lieu of prerogative writs. The trial court granted plaintiffs’ application for a preliminary injunction and denied defendants’ motion to dismiss the complaint or, in the alternative, to transfer the matter to the Tax Court.
After a four day trial, the court issued an oral opinion in which it concluded that Newark had improperly denied plaintiffs’ applications for tax abatements. Accordingly, the court entered judgment requiring Newark to grant tax abatements to plaintiffs retroactively to the date of issuance of the certificates of occupancy.[1]
*244 Defendants appeal both from the denial of their motion to transfer the case to the Tax Court and from the judgment in plaintiffs’ favor. We affirm.
I
Since this case has now been tried to conclusion in the Superior Court, Law Division, the question before us is not whether the Tax Court would have had jurisdiction or, assuming the existence of such jurisdiction, whether the Tax Court would have been the preferable forum. Rather, the question is whether the Law Division had jurisdiction, thus permitting us to review its decision on the merits.
We considered the relationship between the Tax Court’s statutory jurisdiction and the Superior Court’s jurisdiction over actions in lieu of prerogative writs in Alid, Inc. v. Township of North Bergen, 180 N.J.Super. 592, 436 A.2d 102 (App.Div.1981), in which we held that the Tax Court had exceeded its authority under N.J.S.A. 2A:3A-4(a) in granting an injunction with respect to the adoption of a municipal budget. We noted that an action “to compel the governing body to exercise discretionary functions, was, in the first instance, cognizable only in the Law Division of the Superior Court,” citing the constitutional grant of jurisdiction to the Superior Court over actions in lieu of prerogative writs as well as the implementing court rule, R. 4:69-1. Id. at 603, 436 A.2d 102.
The Supreme Court dismissed an appeal from our decision as moot, but also entered an order providing in relevant part:
[P]ursuant to N.J. Const. (1947), Art. 6, § 2, ¶ 3; Art. 6, § 5, ¶ 4 and Art. 6, § 7, ¶ 2, when relief in lieu of a prerogative writ is sought with respect to any matter then pending in the Tax Court involving a state or local tax, including enforcement of an order or judgment of the Tax Court or county board of taxation, the action shall be transferred to the Superior Court, Law Division, and, for the purpose of *245 having such claim adjudicated, unless good cause to the contrary is shown, the matter shall be heard by a judge of the Tax Court who has been temporarily assigned to the Superior Court, Law Division, by the Chief Justice. FURTHER ORDERED that, if an action in lieu of prerogative writ is brought in the Superior Court, Law Division, relating to any judgment of or any action pending in the Tax Court, the Assignment Judge may assign the matter to a judge of the Tax Court who has been temporarily assigned to the Superior Court, Law Division, by the Chief Justice.
[Alid, Inc. v. Town of North Bergen, 89 N.J. 388, 388-89, 446 A.2d 126 (1982).]
Subsequent to Alid, the Legislature enacted chapter 74 of the Laws of 1993, which provides in part:
The Tax Court shall have jurisdiction to review actions or regulations with respect to a tax matter of the following:
(1) Any state agency or official;
(2) A county board of taxation;
(3) A county or municipal official.
[N.J.S.A. 2B:13-2(a).]
In General Motors v. Linden, 143 N.J. 336, 349, 671 A.2d 560 (1996), the Court noted that N.J.S.A. 2B:13-2 “expands Tax Court jurisdiction to hear any tax-related matters over which the Superi- or Court would have jurisdiction.” However, since the enactment of chapter 74, the Supreme Court has not rescinded the administrative order which accompanied the opinion in Alid or amended the court rule relating to the jurisdiction of the tax court, R. 8:2(a).
In any event, N.J.S.A. 2B:13-2 only purports to expand the Tax Court’s jurisdiction. It does not affect the Superior Court’s jurisdiction over actions in lieu of prerogative writs, which is derived directly from the New Jersey Constitution. N.J. Const, art. VI, § V, ¶ 4. Therefore, we have no need to decide whether the Tax Court would have had jurisdiction over this case. The only question is whether the Superior Court, Law Division, correctly concluded that plaintiffs’ complaint could be viewed as an action in lieu of prerogative writs over which it had jurisdiction.
This case does not involve a challenge to the accuracy of the assessments upon plaintiffs’ properties or any other action by the Tax Assessor. Instead, plaintiffs challenge administrative action by Newark’s Corporation Counsel and/or a committee of the municipal council denying their applications for tax abatements. *246 Consequently, this case involves a challenge to the kind of municipal action which traditionally has been subject to the Superior Court’s jurisdiction over actions in lieu of prerogative writs. See, e.g., Township of North Bergen v. Jersey City, 232 N.J.Super. 219, 556 A.2d 1255 (App.Div.), certif. denied, 117 N.J. 632, 569 A.2d 1334 (1989) (action in lieu of prerogative writs challenging grant of a tax abatement by Jersey City Municipal Council); Essex Cty. Bd. of Taxation v. Newark, 139 N.J.Super. 264, 267-68, 353 A.2d 535 (App.Div.1976), modified, 73 N.J. 69, 372 A.2d 607 (1977) (action in lieu of prerogative writs by county board of taxation against municipality to compel professional reevaluation of all property in municipality). Furthermore, even though plaintiffs also attempted to challenge the denials of their tax abatement applications by appeals to the Essex County Board of Taxation, the Board apparently rejected those appeals on the ground that it had no jurisdiction. Therefore, we are satisfied that the Superior Court, Law Division, had jurisdiction to hear this case and that we have jurisdiction to review the merits of its decision.
II
N.J.S.A. 54:4-3.141 provides in relevant part:
The governing body of a qualified municipality may, by ordinance, determine that one or more areas within the municipality are in need of rehabilitation, and that one or more buildings or structures in any such area could be advantageously converted to qualified residential property or that vacant land in any such area could be advantageously used for the construction of qualified residential property.
N.J.S.A. 54:4-3.142 provides in relevant part:
The governing body of a qualified municipality ... may, by ordinance, provide for abatements of real property taxes for qualified residential property.
N.J.S.A. 54:4-3.144 provides that an application for a tax abatement “shall be filed with the assessor within 30 days ... following the completion of the improvement.” If a tax abatement is granted, the applicant must make payments in lieu of taxes for the improvements, computed pursuant to one of two statutory formulas, N.J.S.A. 54:4-3.145, and also must pay real property taxes at the normal rate for the land on which the improvements are located, N.J.S.A. 54:4-3.148. The act further provides that “[n]o abatement shall be granted ... with respect to any property for *247 which property taxes are delinquent or remain unpaid, or for which penalties for nonpayment of taxes are due.” N.J.S.A. 54:4-3.149.
Under the ordinance adopted by Newark pursuant to this legislation, a property must be occupied by its owner to qualify as an “eligible residential property” (N.R.O. 10:15-3a); if there are multiple dwelling units, the owner must live in one (N.R.O. 10:15-3b); all real estate taxes must be current (N.R.O. 10:15-3c); an architect’s certification which states a cost of construction must be submitted (N.R.O. 10:15-3e); the city must approve the abatement by ordinance of the municipal council (N.R.O. 10:15-3f); and council approval must be reflected by a formal written agreement (N.R.O. 10:15-3g). In addition, the owner of an eligible property must file an application for a tax abatement within thirty days of completion of construction (N.R.O. 10:15-4a).
Plaintiffs complied with all the express requirements of the ordinance, except for the execution of a formal written agreement with Newark, which they were unable to do because Newark denied their applications. Nevertheless, Newark advised plaintiffs by letters from the Corporation Counsel that their applications were denied. These letters state in pertinent part:
Pursuant to the Tax Abatement Committee’s directive, an official of the City of Newark Construction Code Enforcing Agency conducted an inspection of said property. The inspector found the premises in violation of the New Jersey Uniform Construction Code. As you are aware, a Notice of Violation and Order to Terminate was issued.
Based upon the change of use violation issued against your property, please be advised that the City of Newark has denied your tax abatement application.
Thus, Newark apparently relied upon two grounds for denying plaintiffs’ applications: (1) the existence of a violation of the building code, and (2) a change of use.
Newark reasserted these same two grounds for denial of plaintiffs’ applications in their “factual and legal contentions” appended to the pretrial order:
When the developer applied to the Central Planning Board of the City of Newark for site plan approval it was represented that two-family homes would be constructed. More specifically, the representations of the developer and the architect plans indicated that the homes would consist of three stories. The second and third *248 stories were to consist of one apartment unit, respectively. Whereas, the first story and ground level was to consist of a basement and garage. The plaintiffs submitted applications to the Tax Assessor’s Office of the City of Newark, requesting a 5 year tax abatement, pursuant to N.J.S.A. 54:4-3.139 et seq. In accordance with Newark Bevised Ordinance 10:15-1 et seq., the plaintiffs submitted architect’s certifications and certificates of occupancy in support of their applications. The documents represent that the plaintiffs homes are two-family dwellings. Subsequently, the plaintiffs’ homes were reinspected by building code officials of the City of Newark and found to be in violatipn of the Uniform Construction Code. Based upon the violations which existed and the misrepresentation as to the classification of the homes as two-family dwelling; the plaintiffs’ applications for tax abatement were denied.
At trial, Newark failed to present evidence that any of the plaintiffs had-changed the use of their properties from two to three family dwellings. However, Newark presented undisputed evidence that plaintiffs had constructed additional improvements to the basements of their homes without first obtaining the building permits required under the building code. In fact, each of the plaintiffs was fined for this violation of the building code. Consequently, the sole question presented at trial was whether Newark could deny plaintiffs’ tax abatement applications based on their construction of additional improvements without first obtaining building permits.
The trial court concluded in an oral opinion that plaintiffs’ construction of additional improvements without a building permit did not provide a basis for the denial of a tax abatement pursuant to N.J.S.A. 54:4-3.139 to -3.149 and the Newark ordinance adopting this tax abatement program:
The only issue here, was because construction was done without a building— without an application for a building permit, was the City of Newark in a position to deny a tax abatement. I find it was not.
Because what the municipality is trying to do, is enforce its construction code. I see no connection between that and the tax abatement.
The court also noted that Newark’s denial of plaintiffs’ tax abatement applications was procedurally defective because the denials were made by the Corporation Counsel, apparently on behalf of [the] “Tax Abatement Ad Hoc Committee” composed of three members of the city council, rather than by an ordinance or resolution adopted by the mayor and council. In addition, the *249 court noted that, except for the statute and ordinance, there were no standards to control the Tax Abatement Ad Hoc Committee’s review of tax abatement applications.
We are in full agreement with the trial court’s conclusion that Newark acted beyond its authority under N.J.S.A. 54:4-3.139 to - 3.149 and the implementing Newark ordinance in denying plaintiffs’ applications for tax abatements. Although the Legislature conferred discretion upon municipalities to determine whether to grant tax abatements for new construction of residential structures in urban enterprise zones, it required this discretion to be exercised by ordinance and in conformity with the enabling legislation. N.J.S.A. 54:4-3.142. It did not confer discretion upon municipalities to grant or withhold tax abatements on an ad hoc basis for reasons which are not set forth expressly or by fair implication in the enabling legislation or implementing ordinance. We have no need to decide whether a municipality could provide for the denial of a tax abatement application based on an applicant’s violation of the building code, zoning ordinance or other municipal regulation. We only decide that a municipality may not deny a tax abatement application on such grounds without prior legislative authorization.
On appeal, Newark argues that it properly denied plaintiffs’ applications because they contained false or misleading information. However, Newark did not deny plaintiffs’ tax abatement applications on this basis, nor did it advance such a contention at the pretrial conference or even at trial. It is firmly established that an appellate court ordinarily will not consider issues which have not been properly presented to the trial court. Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). We perceive no reason to depart from this salutary principle in the present case. If Newark had contended that plaintiffs’ applications were properly denied because they contained false or misleading information, this would have raised a number of legal and factual issues which were not addressed at trial. For example, were the applications false or misleading as of the time they were filed? If the applications were truthful and not misleading when *250 filed, did plaintiffs have an obligation to supplement their applications when they subsequently constructed additional improvements to their homes? If plaintiffs had an obligation to supplement their original applications, was the failure to satisfy that obligation a sufficient ground to deny their applications completely? Were plaintiffs aware that their applications contained false or misleading information? Did plaintiffs’ failure to inform Newark of the additional improvements result in an underreporting of the costs of those improvements and hence a reduction in plaintiffs’ in lieu of tax obligations? Was any inaccuracy or omission in plaintiffs’ applications material in any other respect? We do not suggest that the answers to these questions would be dispositive of plaintiffs’ entitlement to tax abatements. Our only point is that the entire course of trial court proceedings would have been different if Newark had asserted in a timely manner that plaintiffs’ applications were properly denied because they contained false or misleading information.
Affirmed.

 The judgment further provides that "the original Architect's Certification indicating the costs of the improvements in the amount of $100,000.00 attached to ... each Plaintiff's tax abatement application is amended to the amount of $107,500.00 to include any alterations to the basements that may not have been included in the original calculations as to those Plaintiffs who have obtained the necessary permits for the alterations in the basements” and "the tax abatement *244 payments in lieu of real estate taxes shall be $2,150.00 per year for those Plaintiffs with the permitted basement alterations and $2,000.00 for those Plaintiffs without the basement alterations." Defendants do not challenge this part of the judgment.