KUSKIN, J.T.C.
I
Plaintiff, Town of Secaucus, seeks a revision of the 1997 county equalization table for Hudson County. Specifically, plaintiff contends that the aggregate valuation of the City of Jersey City, as utilized by the Hudson County Board of Taxation for purposes of preparing the equalization table, improperly omitted substantial tax ratables, and that such omission constituted a denial of equal protection under N.J. Const, art.l, 111. The Tax Court has jurisdiction over this matter pursuant to N.J.S.A 54:51A-4(a), which provides, in relevant part, as follows:
A county equalization table may be reviewed by the tax court on complaint of any taxing district or taxpayer in the county, or on its own motion, but the review shall *219 not suspend the apportionment of moneys or collection of taxes. No change shall be made in the table except after a hearing in the county, of which 5 days’ notice shall be given by mail to the governing body of each taxing district. If, after the hearing, the tax court shall determine that the aggregate valuation of any district or districts as fixed by the county board'was erroneous, it shall revise and correct the equalization table, and ascertain the difference between the amount of State and county taxes actually charged against each district in the county or distributed to it and the amount which should have been charged or distributed according to the corrected table and enter judgment accordingly____The tax court may make all orders necessary to carry out the provisions of this section, but the review shall be completed before September 10, annually.[1]
The ratables in issue consist of properties granted tax exemptions or abatements under the following statutes:
(a) N.J.S.A 40A:21-1 to -21, the Five-Year Exemption and Abatement Law;
(b) N.J.S.A 54:4-3.95 to -3.112;
(e) N.J.S.A 40A:20-1 to -20, The Long Term Tax Exemption Law;
(d) N.J.S.A. 40:550-40 to -76, The Urban Renewal Corporation and Association Law of 1961;
(e) N.J.S.A. 40:550-77 to -108, the Urban Renewal Nonprofit Corporation Law of 1965;
(f) N.J.S.A. 55:141-1 to -9, the Senior Citizens Nonprofit Rental Housing Tax Law; and
(g) N.J.S.A. 55:16-1 to -22, the Limited-Dividend Nonprofit Housing Corporations or Associations Law.
N.J.S.A. 54:4-3.95 to -3.112 were repealed by L. 1991, c . 441, effective January 18,1992, and replaced by the Five-Year Exemption and Abatement Law. The Urban Renewal Corporation and Association Law of 1961, the Urban Renewal Nonprofit Corporation Law of 1965, the Senior Citizens Nonprofit Rental Housing Tax Law and the Limited-Dividend Nonprofit Housing Corporation or Associations Law were repealed by L. 1991, c. 431, effective April 17, 1992, and replaced by the Long Term Tax Exemption Law. The statutes set forth in items (a) and (b) are hereinafter referred to together as the “Five-Year Laws,” and the *220 statutes set forth in items (c) through (f) are hereinafter referred to collectively as the “Long Term Laws.”
The Complaint named only the Hudson County Board of Taxation as the defendant. The City of Jersey City subsequently intervened as a defendant, by consent. Before such intervention, counsel for the Town of Secaucus served a subpoena duces tecum and ad testificandum on the City seeking discovery of voluminous documents relating to exemptions and abatements granted under the Five-Year Laws and the Long Term Laws. Jersey City refused to comply, and Secaucus moved to enforce the subpoena. In ruling on such motion, I determined that N.J.S.A 40A:21-11(c) and its predecessor, N.J.S.A. 54:4-3.104, both of which are parts of the Five-Year Laws, contained provisions specifically requiring inclusion, for county equalization purposes, of a specified portion of the value of properties granted exemption or abatement under the Five-Year Laws. Accordingly, I granted the motion to enforce the subpoena as to documents relating to those properties. Because none of the Long Term Laws contained provisions requiring inclusion, for county equalization purposes, of the value of properties granted tax exemption or abatement, I deferred ruling on the enforceability of the subpoena as to such properties pending a determination of whether, as a matter of law, such value, or any portion thereof, must be included in Jersey City’s aggregate valuation. The mechanism for obtaining such determination was a motion for partial summary judgment filed by plaintiff. On January 30,1998,1 heard argument on such motion and rendered an oral decision. This opinion amplifies the portions of that decision relating to (a) the nature of the county equalization process and (b) the Legislature’s authority to allocate the county tax burden among municipalities.
Although the allegations of the Complaint could be construed to encompass tax exemptions and abatements granted under statutes other than the Five-Year Laws and the Long Term Laws, counsel for Secaucus acknowledged, at oral argument of the motion, that plaintiffs claims relate only to these Laws. Plaintiffs motion for partial summary judgment seeks determinations and declarations *221 by the court that, for purposes of equalization for county tax apportionment for the tax year 1997, (1) all or some portion of the value of properties granted tax exemption or abatement under the Long Term Laws must be included in Jersey City’s aggregate valuation, and (2) the full value of properties improperly granted tax exemption or abatement under the Five-Year Laws or the Long Term Laws must be included in the City’s aggregate valuation.
II
The obligation of a county board of taxation to prepare an equalization table is set forth in N.J.S.A. 54:3-18, which provides, in relevant part, as follows:
The county board of taxation in each county shall meet annually for the purpose of reviewing the equalization table prepared [by the county tax administrator] pursuant to K.S. 54:3-17 with respect to the several taxing districts of the county. At the meeting a hearing shall be given to the assessors and representatives of the governing bodies of the various taxing districts for the purpose of determining the accuracy of the ratios and valuations of property shown in the equalization table, and the board shall confirm or revise the table in accordance with the facts. The hearings may be adjourned from time to time but the equalization shall be completed before March 10.
Under N.J.S.A. 54:3-17, the county tax administrator is required to submit a proposed equalization table to the county board on or before March 1. That statute also provides that, not later than March 1, a copy of the table must be mailed to the assessor of each taxing district and the Division of Taxation, and posted at the county courthouse.
In performing its equalization responsibilities, the county board of taxation acts in a legislative or gwm-legislative capacity. Accordingly, it may avail itself of general information as well as expert knowledge which the board or any of its members obtain in the performance of day-to-day administrative activities. City of Passaic v. Passaic County Bd. of Taxation, 18 N.J. 371, 384, 113 A.2d 753 (1955). In conducting the statutorily mandated hearing with assessors, the county board is not required
strictly to adhere to the common-law rules of evidence, as it is that the board adjudicates no controversy upon such a hearing. In the discharge of its legislative *222 or gMosi-legislative function, it is its duty to seek ail enlightenment that will help it so far as possible to avoid errors in its ultimate determination of assessment ratios. It therefore receives and should receive any proofs reasonably calculated to assist it in reaching a correct determination of the ratios and the board should not reject such proofs or refuse appropriate evidential weight to them out of an over-sensitive regard for their admissibility under rules of evidence applicable in judicial proceedings. We repeat for emphasis that the entire process is legislative or quasi-legislative in nature, not proposed to adjudicate disputes with or among the municipalities but solely to enable the county board best and properly to perform its delegated function to secure as best may be a fair apportionment of the burden of county taxes among the municipalities of the county.
[Id. at 389, 113 A.2d 753 (citations omitted).]
In reviewing a county equalization table under N.J.S.A. 54:51A-4(a), the Tax Court applies the same standards, and performs the same role, as the county board of taxation. See City of Passaic v. Passaic County Bd. of Taxation, supra, 18 N.J. at 393, 113 A.2d 753, where the Court held that the function of the Division of Tax Appeals (the predecessor to the Tax Court), in reviewing a county equalization table, “is the identical function charged in the first instance to the county board.”
Ill
The first issue for decision is whether the full value, or some portion of the value, of properties granted tax exemptions or abatements under the Long Term Laws should be included in Jersey City’s aggregate valuation for equalization purposes. In contrast to the Five-Year Laws which, in N.J.S.A 40A:20-11(a) and N.J.S.A . 54:4-3.104, require inclusion of exempt and abated properties in a municipality’s aggregate valuation, the Long Term Tax Laws contain no provisions requiring such inclusion. The Urban Renewal Corporations and Associations Law of 1961 and the Urban Renewal Nonprofit Corporation Law of 1965 contained inclusion provisions until 1983, when the provisions were deleted by L. 1983, c. 258. The Senior Citizens Nonprofit Rental Housing Tax Law and the Limited-Dividend Housing Corporations or Associations Law never contained any such provisions. The Long Term Tax Exemption Law omitted such provisions, and thus, at the time of enactment, was consistent with its predecessor statutes.
*223 The Senate County and Municipal Government Committee, Statement to Senate Bill 1561 (September 16, 1982), enacted as L. 1983, c. 258, explained the deletion of equalization provisions from the Urban Renewal Corporations and Associations Law of 1961 and the Urban Renewal Nonprofit Corporation Law of 1965 as follows:
Senate Bill No. 1561 amends the pertinent provisions of the “Urban Renewal and Association Law of 1961” and the “Urban Renewal Non-Profit Corporation Law of 1965” (popularly known as the Fox-Lance Laws), to remove the requirement that the annual service charges for municipal services paid by urban renewal corporations and associations and renewal nonprofit corporations be capitalized for county tax purposes.
The Senate committee notes that the annual service charges are specifically designated in the existing statute as being in return for “municipal services supplied to said project.” ... It is the municipality which enters into the financial agreement with the urban renewal corporation, under which the municipality agrees to grant tax abatements for improvements made by the corporation to properties in the blighted area, agrees to provide certain municipal services or to undertake certain work in order to assist in completion of the project, and receives in return an annual service charge payment. Tax abatements granted under the agreement are only upon project improvements, and do not diminish the amount of taxes received by the county from that received prior to the improvement.
A similar explanation is contained in the Assembly Housing and Urban Policy Committee Statement to this Bill.
These Statements reflect a legislative determination that, because the “Fox-Lance Laws” required all payments in lieu of taxes to be used for municipal purposes, calculating a municipality’s share of the county tax burden by including properties which, by law, could not contribute to those county taxes, would be inappropriate and unfair. The Fiscal Estimate prepared by the Office of Legislative Services notes that Senate Bill 1561 “would have no direct fiscal impact on the State or its municipalities. It would, however, shift the tax burden among residents of counties in which Fox-Lance projects are located. The taxes of residents of municipalities with Fox Lance projects would be reduced, with the reduction being made up by other county residents.” The cities of Newark and Jersey City are specifically identified as having “significant Fox-Lahce activities” and, therefore, benefit-ting from the shift in tax burden.
*224 Allocation of the county tax burden is a matter of legislative discretion, and the Legislature’s exercise of its discretion can satisfy the requirements of the New Jersey Constitution even if the resulting allocation is disproportionate. In North Bergen Tp. v. Jersey City, 232 N.J.Super. 219, 556 A.2d 1255 (App.Div.1989) (in which the Town of Secaucus was a party plaintiff), the plaintiffs contended that property in Jersey City, which was granted tax abatement under N.J.S.A. 55:14K-37(b) (part of the “New Jersey Housing and Mortgage Finance Agency Law of 1983”), in exchange for payments in lieu of taxes, should be included in the aggregate valuation of Jersey City for county equalization purposes. The plaintiffs further contended that permitting the property to be excluded would be unconstitutional “because it has the effect, indirectly, of improperly delegating authority to Jersey City to tax North Bergen and Secaucus without representation and of authorizing arbitrary allotments of tax revenue.” Id. at 230, 556 A.2d 1255.
The Appellate Division rejected these contentions as “clearly without merit.” Ibid. The court found legislative intent to exclude from the equalization process properties granted exemption or abatement under the New Jersey Housing and Mortgage Finance Agency Law of 1983 based upon the Legislature’s omission from the Law of certain provisions in predecessor legislation. The omitted provisions required inclusion, for county equalization purposes, of the value of properties granted exemptions or abatements which made payments in lieu of taxes. The court sustained this exercise of legislative prerogative as follows: *225 See also City of Trenton v. Mercer County Bd. of Taxation, 155 N.J.Super., 181, 184, 382 A.2d 651 (App.Div.1977), where the court recognized that the “wisdom” of a statute including or excluding the value of tax exempt or abated properties, for purposes of allocating county taxes, “is for the Legislature and not the courts.” (citation omitted).
*224 There is a strong presumption favoring the constitutionally of a statute____[A] statute’s disproportionate tax effect on particular municipalities does not make it constitutionally deficient____The exclusion of revenue received by municipalities by way of service charges under N.J.S.A. 55:14K-37(b) from county and state equalization tables applies equally to all municipalities. True, the amount actually excluded from the tables may vary by municipality. The Legislature, however, has wide discretion in allocating the burdens of government. It has plainly and unmistakably here exercised that discretion. Absent a constitutional or legal error, it is not the judicial function to review the societal merit of a legislative program which may sacrifice some tax revenue for another perceived public objective.
[Id at 231-32, 556 A.2d 1255 (citations omitted).]
*225 The legal principles set forth in North Bergen v. Jersey City are applicable to Secaucus’ claims in this proceeding, even though the claims relate to different statutes, and even though Secaucus’ claim of unconstitutionality is based on different grounds. The Legislature’s authority and discretion to allocate the county tax burden is not dependent upon the statute effecting the allocation. Accordingly, the Legislature’s authority and discretion to allocate the county tax burden under the Long Term Laws is the same authority and discretion articulated by the Appellate Division in North Bergen v. Jersey City, supra. The Legislature exercised such discretion and authority with respect to the Long Term Laws by: (1) deleting from the Urban Renewal Corporations and Associations Law of 1961 and the Urban Renewal Nonprofit Corporation Law of 1965 provisions requiring that a municipality’s aggregate valuation, for county equalization purposes, include values attributable to properties granted tax exemptions or abatements, (2) omitting such provisions from the Senior Citizens Nonprofit Rental Housing Tax Law and the Limited-Dividend Housing Corporations or Associations Law as originally enacted, (3) omitting such provisions from amendments to the Limited-Dividend Housing Corporations or Associations Law adopted in 1967 and 1980 (when the Urban Renewal Corporations and Associations Law of 1961 and the Urban Renewal Nonprofit Corporation Law of 1965 contained inclusion provisions), and (4) omitting inclusion provisions from the Long Term Tax Exemption Law.
The allocation of the county tax burden effected by the Legislature in the Long Term Laws does not result in a denial of equal protection to Secaucus. The right to equal protection is implicit in N.J. Const, art. 1, ¶ 1. Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 79, 389 A.2d 465 (1978). The test to *226 determine whether legislation violates such right is whether the legislation is “rationally related to a legitimate state interest.” Property Owners and Managers Ass’n. v. Mayor and Town Council of Parsippany-Troy Hills, 264 N.J.Super. 538, 544, 624 A.2d 1381 (App.Div.1993). In the field of taxation, the Legislature possesses “the greatest freedom in classification.. ,[T]he presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes.” Salario v. Glaser, 82 N.J. 482, 515, 414 A.2d 943 (1980) (quoting from Madden v. Kentucky, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590, 593 (1940)).
The Legislature’s deletion from the Urban Renewal Corporation and Association Law of 1961 and the Urban Renewal Nonprofit Corporation Law of 1965 of provisions requiring inclusion, for county equalization purposes, of the value of properties granted abatements or exemptions, has a rational basis, namely, the reasons set forth in the Senate and Assembly Committee Statements. A second rational basis for the deletion can be derived from the statements of purpose set forth in such Laws which recognize that “the successful clearance, replanning, development and redevelopment of ... blighted areas necessitates the use of special financial arrangements to secure adequate private investment.” N.J.S.A 40:55C-41; N.J.S.A 40:55C-78. Providing relief from the county tax burden, to municipalities which agree to exemptions or abatements under the foregoing Laws, encourages those municipalities to grant such exemptions or abatements and thus fosters the purposes and objectives of clearance and redevelopment of blighted areas.
Similar statements of purpose and policy appear in each of the other Long Term Laws. See N.J.S.A 55:141-2; N.J.S.A 55:16-2; N.J.S.A 40A:20-2. The Long Term Tax Exemption Law describes “special financial arrangements” as “including the granting of property tax exemptions.” N.J.S.A 40A:20-2. These purposes and policies, therefore, also constitute a rational basis for the omission from the Senior Citizens Nonprofit Rental Housing Tax *227 Law, the Limited-Dividend Nonprofit Housing Corporations or Associations Law, and the Long Term Tax Exemption Law of provisions including exempt or abated properties in a municipality’s aggregate valuation.
Based on the foregoing analyses, I conclude that properties granted tax exemptions or abatements under any of the Long Term Laws are not includible in the aggregate valuation of Jersey City for county equalization purposes. I further conclude that the exclusion of such ratables does not violate N.J. Const, art. 1, 111.
IY
The second issue raised by plaintiffs motion relates to properties which plaintiff alleges were improperly granted abatements or exemptions under the Five-Year Laws or the Long Term Laws. Plaintiff contends that it may, in the context of this challenge to the Hudson County equalization table, contest the validity of such exemptions or abatements. Defendants respond that claims based on improper abatements or exemptions are not included in the complaint and are now barred by R. 8:4 — 1(a)(1), which requires that a challenge to an equalization table be filed within forty-five days after the table is adopted or promulgated. Defendants also contend that the validity of abatements or exemptions may not be determined in this proceeding, and that Secaucus can challenge such validity only in other proceedings, such as assessment appeals filed on or before April 1 pursuant to N.J.S.A. 54:3-21.
The complaint filed by Secaucus consists of two counts. The First Count alleges, in summary, that the abstract of ratables report submitted to the Hudson County Board of Taxation by Jersey City improperly designated $1,612,952,928 in the classification of “Other Exemptions Not Included in the Foregoing Classification,” and that all or a portion of the value of properties granted tax exemptions or abatements under the Five-Year Laws or Long Term Laws should have been included in Jersey City’s aggregate valuation for county equalization purposes. The Second Count alleges that the failure to include those properties resulted in a denial of equal protection under the New Jersey Constitution.
*228 Secaucus argues that these allegations incorporate claims relating to improperly granted exemptions or abatements. In the alternative, Secaucus contends that the court should permit the complaint to be amended to include such claims, and that such amendment should relate.back to the date of filing of the complaint.
The allegations of the complaint do not expressly encompass claims relating to improperly granted exemptions or abatements, nor can such claims readily be inferred from the language of the complaint. I conclude, however, that the complaint may be amended to include such claims. Amendments to complaints in the Tax Court are governed by R. 8:3-8(a), which supersedes R. 4:9-1, the rule applicable to amendments to complaints in the Superior Court. Under the Tax Court rule, before completion of the pretrial conference (if one is held) or before the first trial date has been assigned, a complaint may be amended without cause. If the defendant objects, “the matter may be listed for hearing in the discretion of the court.” After completion of the pretrial conference or fixing of the first trial date, a complaint may be amended “only by motion for good cause shown.”
Here, no pretrial conference was held and the first trial date has not been set. Defendants, however, have objected to the proposed amendment. Under these circumstances, the court may, in its discretion permit the amendment, and I will do so. Recent decisions interpreting R. 4:9-1 liberally permit amendments to pleadings. See G & W, Inc. v. East Rutherford Bor., 280 N.J.Super., 507, 516, 656 A.2d 11 (App.Div.1995); Coastal Group, Inc. v. Dryvit Systems, Inc., 274 N.J.Super., 171, 180-81, 643 A.2d 649 (App.Div.1994). This approach should be employed when interpreting R. 8:3-8(a). The complaint alleges that certain properties were improperly excluded from Jersey City’s aggregate valuation. The amendment relates to, and constitutes an aspect of, the subject matter of the complaint, and would simply augment the bases for the complaint’s allegations of improper exclusion. At this stage of the proceeding, the amendment will not require an *229 extension of time for discovery, will not delay the trial date, and will not materially prejudice the defendants.
Such amendment would be out-of-time and subject to dismissal unless it relates back to the filing date of the complaint. R. 4:9-3 (applicable to the Tax Court under R. 4:1) sets forth the circumstances under which a pleading amendment may relate back. The rule permits relation back “[wjhenever the claim... asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading.” In her comment to this rule, Judge Pressler states: “[wjhat the rule does accomplish, consistent with the general aim and policy of these rules, is substantial justice on the merits by permitting a technical and otherwise fatal flaw to be corrected where such correction will not materially prejudice another party.” Pressler, Current N.J. Court Rules, comment 2 on R. 4:9-3 (1998). Decisions interpreting the rule are consistent with Judge Pressler’s comment. See Ciaudelli v. Atlantic City, 268 N.J.Super. 439, 633 A.2d 1035 (App.Div.1993), certif. den., 136 N.J. 28, 641 A.2d 1039 (1994), Wimmer v. Coombs, 198 N.J.Super. 184, 486 A.2d 916 (App.Div.1985) and Lombardi v. Simon, 266 N.J.Super. 708, 630 A.2d 426 (Law Div.1993).
Although the relation-back doctrine is not applicable to a new cause of action barred by the statute of limitations, relation-back is appropriate where the amendment is not a distinctly new claim and is germane to the underlying claim asserted in the complaint. Harr v. Allstate Ins. Co., 54 N.J. 287, 299-300, 255 A.2d 208 (1969); Wimmer v Coombs, supra, 198 N.J.Super. at 187, 486 A.2d 916; Pressler, Current N.J. Court Rules, comment 1 on R. 4:9-3 (1998). Here, as noted above, the proposed amendment is germane to the conduct alleged in the complaint, and permitting the amendment to relate-back will not materially prejudice the defendants. I will, therefore, permit relation-back to the date the complaint was filed.
Having allowed the complaint to be amended, I must determine whether plaintiff may, in this challenge to the county equalization table under N.J.S.A. 54:51A-4(a), contest the validity of abate *230 ments or exemptions granted pursuant to the Five-Year Laws or the Long Term Laws.
The time schedule established by N.J.S.A 54:4-17 and N.J.S.A 54:3-18 provides the county board of taxation with a maximum of ten days to convene a meeting of assessors, consider their comments, determine “the accuracy of the ratios and valuations of property as shown in the equalization table,” and “confirm and revise the table in accordance with the facts.” The brevity of this time period, itself, implies a limited scope for the county board’s equalization function. Such limited scope is also suggested by a comparison of the county board’s equalization responsibilities as described in N.J.S.A 54:3-18, with the board’s responsibilities to review annual assessment lists submitted by assessors as described in N.J.S.A 54:4-47. This latter statute provides as follows:
The county board may adjourn from time to time in the discharge of its duties, and may, after investigation, revise, correct and equalize the assessed value of all property in the respecting taxing districts, increase or decrease the assessed value of any property not valued at its taxable value, assess property omitted from any assessment, as provided by law, at its taxable value, and in general do everything necessary for the taxation of all property in the county at its taxable value.
The Supreme Court has articulated the distinctions between the county board’s functions under N.J.SA 54:3-18 and N.J.S.A 54:4-47.
We have therefore been required to conclude in an earlier case that the Legislature did not intend that the duty of the county boards of taxation under N.J.S.A. 54A-47 to revise, correct and equalize the individual personal and real property assessments shown on the several duplicates was requisite to the process of equalizing the aggregates of real estate ratables,
“... the Legislature intended to have the aggregate method provide for an equalization of real property valuations as among taxing districts solely for the purpose of apportioning to each district its fair share of the county tax burden and to have the individual assessment method provide the only basis for equalizing the county and local tax burden as among individual property owners
____” Borough of Totowa v. Passaic County Board of Taxation, supra, 5 N.J. at page 463 [75 A.2d 874].
We thus are not concerned in this case with the remedies of individual taxpayers from the discriminatory assessment of their property____
[City of Passaic v. Passaic County Bd. of Taxation, supra, 18 N.J. at 380, 113 A.2d 753 (citation omitted.) ]
*231 [Tissues as to individual assessments are not germane to the function of equalizing aggregates —
[Id. at 397.]
In Willingboro Tp. v. Burlington County Bd. of Taxation, 62 N.J. 203, 300 A.2d 129 (1973), the Court commented that:
The stated equalization function of the county boards does not in any way affect individual tax assessments against property owners. Those are required to be separately revised and corrected administratively by the county boards after receipt of the lists from the local assessors (N.J.S.A. 54:4-46, 47), and are subject to further revision and correction on appeal to the county boards and the State Division of Tax Appeals.
[Id. at 208, 300 A.2d 129.]
See also City of New Brunswick v. Middlesex County Equalization Table, 25 N.J.Misc., 353, 53 A.2d 641 (Div. Tax App.1947) (holding that equalization of assessments is not accomplished by changing individual assessments).
These decisions establish that the county equalization process does not include review of individual assessments. However, our courts have permitted, in a proceeding involving a challenge to a county equalization table, examination of the propriety of excluding or including sales in the calculation of the ratio used to equalize assessed values. Town of Kearny v. Div. of Tax Appeals, 35 N.J. 299, 173 A.2d 8 (1961); East Windsor Tp. v. Div. of Tax Appeals, 89 N.J.Super. 282, 214 A.2d 708 (App.Div.1965), certif.den., 46 N.J. 338, 217 A.2d 14 (1966). The issue in such examination is whether a sale reflects fair market value; no assessment implications are involved.
Here, the contention by Secaucus that Jersey City improperly granted tax exemptions or abatements is equivalent to a challenge of the individual assessments on the properties involved, and could result in changes to the assessments on, or assessment status of, the properties at issue. Resolution of Secaucus’ contention would require a plenary hearing as to each of the allegedly improper exemptions or abatements. The property owners would be necessary parties to the hearings under R. 4:28-l(a), even though neither N.J.S.A. 54:3-18, N.J.S.A 54:51A-4(a) nor R. 8:5-3(a)(4) (which designates the parties to be served with a complaint seeking review of a county equalization table) provides for the *232 participation of property owners in the county equalization process or in a challenge to the county equalization table. R. 4:28-l(a) requires that a person be joined as a party to an action if:
(1) in the person’s absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest in the subject of the action and is so situated that the disposition of the action in the person’s absence may either (i) as a practical matter impair or impede the person’s ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or other inconsistent obligations by reason of the claimed interest.
A determination by the Tax Court that an exemption or abatement was improperly granted might affect the interest and rights of the property owner, because such determination would likely result in Jersey City’s cancellation of the exemption or abatement. Item 2(i) of the rule, therefore, is applicable. Item 2(ii) is also applicable because Jersey City could be placed in the position of first defending exemptions or abatements for county equalization purposes, and then,' after a court determination that the exemptions or abatements were improperly granted, asserting their invalidity in subsequent appeals seeking restoration of regular assessments.
Each multiple party proceeding contemplated by the preceding paragraph could be protracted, and each would constitute an unwarranted, and impermissible, intrusion of judicial functions into a legislative or gwcm-legislative process. Secaucus can pursue its claims as to properties improperly granted exemptions or abatements in other proceedings. It could, for example, appeal the assessments on such properties under N.J.S.A. 54:3-21, which permits “a taxing district which may feel discriminated against by the assessed valuation ... of property in another taxing district in the county” to appeal such assessed valuation. Secaucus may not, however, pursue those claims in the context of its challenge to the Hudson County equalization table. Accordingly, I deny Secaucus’ motion seeking partial summary judgment permitting such claims under either the Five-Year Laws or the Long Term Laws.
Based on my rulings on plaintiffs motions for partial summary judgment, I deny plaintiffs motion to enforce its discovery subpoena as to documents relating to (1) properties granted tax exemptions or abatements under the Long Term Laws, and (2) *233 properties which Secaucus claims were improperly granted exemptions or abatements under the Five-Year Laws or the Long Term Laws.

 This September 10 deadline is directory, not mandatory. Atlantic City v. Atlantic County Bd. of Taxation, 2 N.J.Tax 30, 44 (Tax 1980), aff'd 4 N.J.Tax 685 (App.Div.1982); Jersey City v. State Bd. of Tax Appeals, 133 N.J.L. 202, 209, 43 A.2d 799 (Sup.Ct.1945), modified sub nom. Jersey City v. Kelly, 134 N.J.L 239, 47 A.2d 354 (E. & A. 1946). Here, all parties have waived the statutory deadline.