101 N.J. Super. 15 (1968)
242 A.2d 873
PAUL CUPROWSKI, MARY E. VERDIRAMO, JAMES J. MACK, FRANK S. MONACO, AND JEROME LAZARUS, PLAINTIFFS,
v.
CITY OF JERSEY CITY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND WILLIAM P. BLACK, CITY CLERK OF THE CITY OF JERSEY CITY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided April 30, 1968.
*18 Mr. Gerold Kanengiser for plaintiffs (Messrs. Gordon & Kanengiser, attorneys).
Mr. James F. Ryan, Corporation Counsel, for the defendants.
ARTASERSE, A.J.S.C.
This is a proceeding in lieu of prerogative writs by the petitioners, all residents and taxpayers of Jersey City, who protest the adoption of the Jersey City municipal budget for the current year.
On April 5, 1968 plaintiffs herein presented to the city clerk a petition allegedly signed by 35,805 residents of Jersey City protesting the city's budget for the fiscal year 1968 and requesting that the said budget be the subject of a referendum to appear on the ballot at an election held pursuant to N.J.S.A. 40:69A-185. The city clerk having refused to accept the petition, plaintiffs have instituted this action to compel the clerk to do so, it being the initial procedural step necessary for a referendum to repeal the budget. Defendants have moved for a dismissal of the complaint alleging that it does not state a legal cause of action.
It is plaintiffs' contention that the city's action in introducing, approving and adopting its budget for the current fiscal year constituted the adoption of an ordinance by the city and is therefore within the purview of N.J.S.A. 40:69A-185, which provides as follows:
"The voters shall also have the power of referendum which is the power to approve or reject at the polls any ordinance submitted by the council to the voters or any ordinance passed by the council, against which a referendum petition has been filed as herein provided. No ordinance passed by the municipal council, except when otherwise required by general law or permitted by the provisions of section 17-32(b) of this act, shall take effect before twenty days from the time of its final passage and its approval by the mayor where such approval is required. If within twenty days after such final passage and approval of such ordinance a petition protesting against the passage of such ordinance shall be filed with the municipal clerk and if the petition shall be signed in the case of municipalities * * * of more than 70,000 inhabitants, by fifteen *19 per centum (15%) of the registered voters of the municipality, * * * the ordinance shall be suspended from taking effect until proceedings are had as herein provided."
N.J.S.A. 40:48-1 provides in part that:
"The governing body of every municipality may make, amend, repeal and enforce ordinances to:
Finances and property. 1. Manage, regulate and control the finances and property, real and personal, of the municipality; * * *"
N.J.S.A. 40:69A-181(b) provides as follows:
"No ordinance other than the local budget ordinance shall take effect less than twenty days after its final passage * * *." (Emphasis added)
Plaintiffs, in effect, contend that a municipality controls and regulates its finances by means of a budget and because of the provisions of N.J.S.A. 40:48-1 and N.J.S.A. 40:69A-181(b), supra, a budget must be an ordinance within the provisions of N.J.S.A. 40:69A-185, supra, and therefore subject to referendum.
The city, on the other hand, contends that a budget is not an ordinance but rather is adopted by resolution and therefore is not within the ambit of N.J.S.A. 40:69A-185, supra, which only pertains to ordinances. In support of its position the city points to N.J.S.A. 40A:4-4 which is part of the Local Budget Law and provides as follows:
"All budgets shall be introduced, approved, amended and adopted by resolution passed by not less than a majority of the full membership of the governing body." (Emphasis added)
The city also contends that even if the budget is an ordinance it is not the type of ordinance that the Legislature intended should be subject to initiative and referendum.
It is well settled that statutory language will be interpreted and applied with an eye toward effectuating the intent of the Legislature. To this end courts will try to *20 harmonize statutes dealing with the same general subject. Loboda v. Clark Tp., 40 N.J. 424 (1963). It is also fundamental that the Legislature is presumed to be familiar with its own enactments and with judicial declarations relating to them. State v. Federanko, 26 N.J. 119 (1958). Thus, under the rules of statutory construction, statutes in pari materia are not to be construed as isolated fragments of the law, but rather as a single and complete statutory arrangement. Such statutes should be considered as if they constituted one act, so that sections of one act may be considered as though they were parts of the other act, as far as this can be reasonably done.
The words "ordinance" and "resolution" are defined in N.J.S.A. 40:49-1 as follows:
"The term `ordinance' * * * means and includes any act or regulation of the governing body * * * required to be reduced to writing and read at more than one meeting thereof and published.
The term `resolution' * * * means and includes any act or regulation of the governing body * * * required to be reduced to writing, but which may be finally passed at the meeting at which it is introduced." (Emphasis added)
Generally, it has been held that a governing body can only act by way of ordinances and resolutions. Woodhull v. Manahan, 85 N.J. Super. 157 (App. Div. 1964); Irvington v. Ollemar, 128 N.J. Eq. 402 (Ch. 1940); and that an action of the governing body which does not rise to the dignity of an ordinance is a resolution. Chasis v. Tumulty, 8 N.J. 147 (1951). Also it has been held that as between two conflicting statutes the latter in time governs. Woodhull v. Manahan, supra.
N.J.S.A. 40:186-1, enacted in 1901, concerning budgets in certain cities provides as follows:
"It shall not hereafter be necessary in any city of this state to submit to election or approval by the voters the appropriations or amounts of money to be raised in each year for the lawful purposes of such city; but said appropriation shall be made by the common council, board of aldermen or other governing body, or by the *21 board having control of the finances of such city, by resolution or ordinance, in which the amounts and objects shall be particularly set forth." (Emphasis added)
This statute allows a city to pass its budget by either ordinance or resolution. See also Fox v. Clark, 72 N.J.L. 100 (Sup. Ct. 1904).
The Legislature enacted the Local Budget Law in 1936. N.J.S.A. 40:2-1 et seq. This law laid down the requirements and procedures to be followed by a municipality when approving and adopting its budget. A reading of this 1936 law (chapter 211, section 106) along with its 1939 and 1947 amendments (see N.J.S.A. 40:2-8) reveals that although the word "resolution" was used, it was not a mandatory procedure. Therefore, cities were still permitted to adopt their budget by ordinance provided that the city in doing so adhered to the time requirements for publishing and for public hearings as contained in the budget law. N.J.S.A. 40:2-7.
When the Legislature passed the Faulkner Act in 1950 it was aware of the fact that prior thereto local budgets could be adopted by ordinance as well as by resolution, but by the provisions of N.J.S.A. 40:69A-181(b) and N.J.S.A. 40:69A-185 it was evident that the Legislature intended that local budget ordinances be exempt from its referendum provisions.
The Legislature provided that the local budget ordinance take effect immediately and not be held in abeyance for 20 days. N.J.S.A. 40:69A-181(b). N.J.S.A. 40:69A-185 provides that all ordinances except one permitted by N.J.S.A. 40:69A-181(b) (the local budget ordinance) be subject to attack by referendum during the 20-day waiting period. It therefore must be assumed that the Legislature excluded the budget from recall because it becomes effective immediately upon adoption. Swain v. Fritchman, etc, 21 Idaho 783, 125 P. 319, 325 (Idaho Sup. Ct. 1912).
Plaintiffs further contended that certain ordinances adopted pursuant to N.J.S.A. 40:46-26 and N.J.S.A. 40:49-27 *22 provide for only a 10-day waiting period instead of 20 days before the said ordinances become effective and that therefore the claim of defendants that the referendum provision did not apply to the resolution adopting the budget because it did not have a 20-day waiting period was not sound. However, a reading of the said sections of the Revised Statutes reveals that each of them has a built-in, special referendum provision. Reference to these statutes gives credence to the contention of defendants that the Legislature never intended a municipal budget to be subject to referendum.
The exemptions of local budgets from attack by referendum was emphasized when the Legislature enacted the Local Budget Law in 1960, which provided for the first time in N.J.S.A. 40A:4-4 that thereafter local budgets shall be approved and adopted by resolution. N.J.S.A. 40A:4-4 provides as follows:
"All budgets shall be introduced, approved, amended and adopted by resolution passed by not less than a majority of the full membership of the governing body." (Emphasis added)
In 1964 the Legislature, in furtherance of the procedural policy enunciated in N.J.S.A. 40A:4-4, supra, amended section 40A:4-10 so that its first paragraph now reads in part as follows:
"* * * Final adoption shall be by resolution adopted by a majority of the full membership of the governing body, * * *." (Emphasis added)
These enactments concerning the Local Budget Law without doubt show that the Legislature intended that local budgets be approved and adopted by resolution and not by ordinance.
Municipal corporations have both legislative and administrative powers. These powers are vested in the governing body and are exercised through resolution or ordinance. *23 The referendum provisions have been held applicable to all ordinances and resolutions which constitute an exercise of the legislative power. An act purely executive or administrative in character is not an exercise of legislative power and therefore is not subject to recall by referendum. This holds true regardless of whether the act is nominally designated a resolution or an ordinance. Denman v. Quin, 116 S.W.2d 783 (Tex. Civ. App. 1938); Keigley v. Bench, City Recorder, 97 Utah 69, 89 P.2d 480, 122 A.L.R. 756 (Utah Sup. Ct. 1939); 122 A.L.R. 769 (1939); Carson v. Oxenhandler, 334 S.W.2d 394 (Mo. Ct. App. 1960). Therefore, it would appear that in stating that all ordinances should be subject to the referendum provisions of N.J.S.A. 40:69A-185 the Legislature was referring to ordinances of a legislative nature and did not intend to include resolutions or ordinances of an executive or administrative nature. Tillamook Peoples' Utility Dist. v. Coates, County Clerk, 174 Or. 476, 149 P.2d 558 (Ore. Sup. Ct. 1944).
In order to ascertain the administrative or legislative nature of the ordinance or resolution the courts have established several tests. Matters which are of a permanent or general character are considered to be legislative while those which are temporary in operation and effect are deemed administrative. Acts which are classified as administrative are those which result from governmental powers properly assigned to the executive department and necessary to carry out legislative policies and purposes already declared either by the legislative municipal body, or devolved upon it by the law of the state. Monahan v. Funk, City Auditors, 137 Or. 580, 3 P.2d 778, 779 (Ore. Sup. Ct. 1931); 62 C.J.S. Municipal Corporations § 454, p. 873.
In People v. City of Centralia, 1 Ill. App.2d 228, 117 N.E.2d 410 (Ill. App. Ct., 1954), the court, in discussing what was legislative and what was administrative, said:
"* * * It has frequently been observed in testing the legislative character of an Act that an ordinance which is legislative in character initiates, or enacts a permanent law, or lays down a *24 rule of conduct, or course of policy, for the guidance of citizens or their officers, and it has been noted that an ordinance which simply puts into execution previously enacted laws is administrative or executive in character. The Illinois Supreme Court, in People ex rel. Board of Education, etc. v. Board of Education, 380 Ill. 311, 43 N.E.2d 1012, points out that while it is at times difficult to draw the distinction as to whether the exercise of a power is administrative or legislative, the true distinction is between a delegation of power to make the law which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution to be exercised under and pursuant to the law. Municipal authorities who exercise discretion and judgment in performing their duties, but who do not, while executing the law under which they act, make or declare any law or rule of conduct, or construe or apply any law, are not exercising legislative or judicial powers, but are acting in a ministerial or administrative capacity. Mitchell v. Lowden, 288 Ill. 327, 341, 123 N.E. 566. (117 N.E.2d, at p. 413)
McQuillin, in his treatise on municipal corporations, pointed out the distinction between administrative and legislative action:
"In reference to what constitutes legislative and what administrative action in connection with restriction of the power of initiative or referendum to legislative matters it has been said that action relating to subjects of permanent and general character are usually regarded as legislative, and those providing for subjects of temporary and special character are regarded as administrative. A construction of a provision that `any proposed ordinance' may be submitted to the commission by a petition signed by a specified number of qualified electors has been construed to mean that any legislative measure of permanent operation can be so submitted, * * *. Obviously, details which are essentially of a fluctuating sort, due to economic or other conditions, cannot be set up in and by an ordinance to be submitted to vote of the people under initiative and referendum statutes, which restricts submission to people to measures of permanent operation." 5 McQuillin, Municipal Corporations (3d ed.), § 16.55, p. 255.
No proponent of initiative and referendum would maintain that all municipal activity should be subject to popular election. If governments are to function there must be some area in which representative action will be final. In many situations it is difficult to determine how far the *25 limitations should go. The courts must draw the line in these situations and in doing so must balance two interests  the protection of city government from harassment as against the benefits of direct legislation by the people. 3 Stanford L.R. 497 (1951).
An essential function of a governing body is the management of the financial affairs of the municipal government, which involves the fixing of a budget to be used as the basis for determining the amount and rate of taxes to be levied. See Geiger v. Board of Supervisors of Butte County, 48 Cal.2d 832, 313 P.2d 545, 549 (Cal. Sup. Ct. 1957).
It is fundamental that to permit a referendum which might annul or delay executive action would destroy the efficiency necessary for the successful administration of the affairs of the municipality. To say that administrative determinations are subject to referendum could defeat the very purpose of local government. To give a small group of the electorate the right to demand a vote of the people upon every administrative act of the governing body would place municipal governments in a straightjacket and make it impossible for the city's officers to carry out the public's business. See Denman v. Quin, supra.
The mandatory provisions of N.J.S.A. 40A:4-1 et seq. (Local Budget Law) relative to itemizing and estimating appropriations, along with the requirement of holding a public hearing by which the public can examine and voice objections, all emphasize the paramount importance which the Legislature attributed to the budget.
A survey of the cases dealing with the question of whether a city budget is a legislative or administrative function shows that such action has been uniformly held to be administrative. Denman v. Quin, supra; State ex rel. Keefe v. St. Petersburg, 106 Fla. 742, 144, So. 313, 145 So. 175 (Fla. Sup. Ct. 1933); Keigley v. Bench, City Recorder, supra; 122 A.L.R. 769 (1939).
In State ex rel. Keefe v. St. Petersburg, supra, it was held that the referendum provisions were not intended to *26 apply to appropriation ordinances, whether considered legislative or administrative in character, for the reason that to hold otherwise would make operations under the system impossible and because matters of financial management were peculiarly within the special knowledge of responsible municipal officials. The court said:
"It would be unreasonable, indeed, to suppose that the Legislature would require the responsible officials of the city to proceed with care and deliberation to prepare a budget in keeping with the financial needs of the city, and then subject the resultant financial arrangement evolved therefrom to a popular referendum election, in which few, if any, of the special factors, which have been studied by competent officials in connection with preparing such an arrangement, would be given that thorough investigation and consideration necessary to make any form of budgetary plan operative. A budget system means sound fiscal management of municipal affairs, by requiring all expenditures, through appropriations, to be predicated on a proper understanding and appreciation of all the pertinent facts which may be ascertained with reference to the advisability of making the same.
* * * matters of financial management, which, while legislative in their character, are such as are impliedly, if not expressly, required by the charter to be dealt with by the city's responsible officers on the basis of peculiar and special knowledge possessed by them concerning the possible resources of the city, and the necessities required to be met through the exercise of the delegated power of taxation." (145 So., at p. 176)
Further,
"* * * Our opinion is that initiative and referendum provisions of the city charter of St. Petersburg were not intended by the legislature to apply to, and do not apply to appropriation ordinances provided for, and required by law to be adopted at stated intervals, for the purpose of making effective the statutory budget system of finances prescribed by the city's fundamental law." (At p. 175)
The court in Denman v. Quin, supra, held that:
"* * * [The] ordinance, which the plaintiffs would have subjected to a referendum, and by that process passed upon by some 30,000 or more voters, consists of seventy-five paragraphs, each covering an item to be taken into consideration, in connection with all the others, in determining the rate of the tax to be levied, in *27 order to raise the amount, previously ascertained, to support the government. Nearly every one of those items is an integral part of a whole complicated structure, every part of which must be consistent with and weighed against every other part." (116 S.W. 2d at p. 787)
The court also stated:
"* * * It seems to be perfectly obvious, too, that ordinances which must rest upon minute investigation of facts and figures, or application of experts, skilled, or technical knowledge, or upon audits, or upon close and careful study or ascertainment or adjustment of masses of facts and figures, such as the elements entering into matters of rate making, cannot be efficiently initiated or passed upon by the public, en masse, however intelligent and patriotic they may be." (At p. 786)
See also Hawkins v. Birmingham, 239 Ala. 185, 194 So. 533 (Ala. Sup. Ct. 1940).
When the resolution here in question is tested by the rules stated above, it becomes obvious that it is not subject to a referendum vote by the people. Moreover, a city's budget can only be fixed at a certain amount for a comparatively short length of time; hence, the resolution in question does not connote permanency and the conclusion is evident that a city's budget is an administrative rather than a legislative act.
Although it is a general rule that referendum provisions are to be liberally construed and that it was the intent of the Faulkner Act to confer the greatest possible power of local self-government and to encourage citizen interest and participation, Meridian Development Co. v. Edison Tp., 91 N.J. Super. 310 (Law Div. 1966); City of Newark v. Dept. of Civil Service, 68 N.J. Super. 416 (App. Div. 1961), it was not intended to be an unlimited and unqualified right. 5 McQuillin, op cit., § 16.54, p. 251.
The consensus of judicial opinions throughout the land is that the preparation, approval and adoption of a municipal budget is administrative in character. To permit the electorate to veto a city budget affecting the fiscal affairs of *28 the city could cause a chaotic situation. This is so even though under certain circumstances the city could operate under the budget of the preceding year with suitable adjustments, N.J.S.A. 40A:4-17, in the administration of its affairs. The referendum statute never intended or contemplated such a result.
It is undisputed that where the Legislature speaks in clear, positive and unambiguous language it can provide for initiative and referendum in budgetary matters. Spencer v. Alhambra, 44 Cal. App.2d 75, 111 P.2d 910 (Cal. D. Ct. App. 1941). But in the absence of such clear, positive and unambiguous mandate by the Legislature, the majority view is that appropriations and budgetary ordinances or resolutions are not subject to initiative and referendum. Exhaustive research fails to reveal any case where a similar attack on a budget was ever made in New Jersey, although there are cases attacking line items for failure to conform to the statute. Therefore, this court concludes that the Jersey City budget is not a proper subject for a referendum.
Under the circumstances herein the municipal clerk of Jersey City was justified in refusing to file the petition and to proceed with a referendum with regard to the budget and the resolution by which it was adopted by the governing body on March 19, 1968. Wyatt v. Clark, Mayor, 299 P.2d 799, 802 (Okl. Sup. Ct. 1956).
Judgment for defendants.