The Honorable Allen Gordon State Senator P.O. Box 558 Morrilton, Arkansas 72110
Dear Senator Gordon:
This is in response to your request, on behalf of the Oppelo City Attorney, for an opinion on the "validity" of a referendum petition submitted to the Oppelo City Clerk and the Conway County Clerk. The petition seeks to refer an ordinance passed by the Oppelo City Council (No. 96-11), to the people of the City of Oppelo for their approval or rejection. You have not enclosed a copy of the ordinance sought to be referred, and, as a consequence, I have not reviewed the ordinance. It is my understanding from the correspondence attached to your request, however, that the ordinance is the City's 1997 "Budget Ordinance," which adopts a budget for the City for calendar year 1997, and appropriates specific sums of money for the various items included therein.
I must note as an initial matter, that my office does not have authority to pass upon the "validity" or sufficiency of local initiative and referendum petitions. See, e.g., Ops. Att'y Gen. 92-183 and 89-299. The determination of the sufficiency of such petitions lies in the first instance with the city clerk, subject to review by the chancery court.See Arkansas Constitution, Amendment 7, and Bradley v. Galloway,279 Ark. 231, 651 S.W.2d 445 (1983). If a question of state law is presented with regard to the submission of the petition, however, my office will issue an advisory opinion on the question, in response to a request therefore, pursuant to the statute authorizing that action. See A.C.A. §25-16-706(b).
That being said, it appears that a question of law has arisen as to whether the ordinance in question is the proper subject of a referendum petition. Amendment 7 to the Arkansas Constitution gives the electors of municipalities the power to refer to the voters "all local, special, and municipal legislation of every character. . . ." Amendment 7 ("Local Petitions"). It has been stated, however, that: "[n]ot all ordinances enacted by City Councils come under the head of `municipal legislation.' City governments in Arkansas know no such complete separation of powers as would automatically classify all aldermanic activities as legislative in character." Scroggins v. Kerr, 217 Ark. 137, 228 S.W.2d 995 (1950). It has been noted that: "city councils often enact resolutions and ordinances that are administrative or executive in character." Id. at 143. The court in Scroggins set out the test for determining whether a city council action is legislative, and thus subject to referendum, or administrative, and not subject to referendum:
 Both legislative and executive powers are possessed by municipal corporations. . . . The crucial test for determining what is legislative and what is administrative is whether the ordinance is one making a new law, or one executing a law already in existence. . . . Executive powers are often vested in the council or legislative body and exercised by motion, resolution or ordinance. Executive action evidenced by ordinance or resolution is not subject to the power of the referendum, which is restricted to legislative action as distinguished from mere administrative action. The form or name does not change the essential nature of the real step taken. The referendum . . . is designed to be direct against `supposed evils of legislation alone.' `To allow it to be invoked to annul or delay executive conduct would destroy the efficiency necessary to the successful administration of the business affairs of a city.'
Id. at 143, quoting 1 McQuillin, Municipal Corporations (2d Ed., Rev., 1940), 1000. See also City of North Little Rock v. Gorman, 264 Ark. 150,568 S.W.2d 481 (1978) and Greenlee v. Munn, 262 Ark. 663, 559 S.W.2d 928
(1978).
The question for determination is thus whether the Oppelo City Council's adoption of Ordinance 96-11 was a legislative action, and thus subject to referendum by the voters, or whether it was an administrative or executive action, and therefore immune from referendum. It is my opinion, after a review of the relevant law, that the 1997 "Budget Ordinance" of the City of Oppelo is not subject to a referendum by the people of the City.
I assume, that in adopting the 1997 "Budget Ordinance," the City was acting pursuant to the authority granted in A.C.A. §§ 14-58-201 to -203 (1987). The first provision in that subchapter provides as follows:
 On or before December 1 of each year, the mayor of all cities and incorporated towns having the mayor-council form of government[1]
shall submit to the governing body of the city or town, for its approval or disapproval, a proposed budget for operation of the city or town from January 1 to December 31 of the forthcoming year.
A.C.A. § 14-58-201.
The second section in the subchapter provides:
 Under this subchapter, the governing body of the municipality shall, on or before February 1 of each year, adopt a budget for operation of the city or town.
A.C.A. § 14-58-202.
As can be seen from the statutes above, a city council, in approving or disapproving a yearly budget, is merely giving a thumbs up or thumbs down to executive or administrative action taken by the mayor. The city council, in this regard, is exercising its statutorily granted right of oversight of executive action. It can be reasonably concluded, in my opinion therefore, that this action does not amount to the enactment of new "legislation," but is rather a supervisory executive action taken pursuant to existing statutory law.[2]
There does not appear to be any Arkansas case law precisely addressing the right of city electors to subject a municipal budget to referendum. Cases from other jurisdictions around the country, however, appear to be unanimous in holding that a city council's action in this regard is administrative rather than legislative. The most recent case, which collects and discusses several older cases, is Cuprowski v. City ofJersey City, 101 N.J. Super. 15, 242 A.2d 873 (N.J.Super.L. 1968),aff'd. 103 N.J. Super. 217, 247 A.2d 28 (N.J.Super. A.D. 1968), cert.denied, 53 N.J. 80, 248 A.2d 433 (1968). In Cuprowski, the residents and taxpayers of Jersey City filed an action to compel the city clerk to accept their petition requesting that the City budget be subjected to a referendum. The court, after discussing New Jersey statutory law, noted that:
 A survey of the cases dealing with the question of whether a city budget is a legislative or administrative function shows that such action has been uniformly held to be administrative. Denman v. Quin,
[116 S.W.2d 783 (Tex.Civ.App. 1938)]; State ex re. Keefe v. St. Petersburg, 106 Fla. 742, 144 So. 313, 145 So. 175 (Fla.Sup.Ct. 1933); Keigley v. Bench City Recorder[3], [97 Utah 69, 89 P.2d 480
(1939)]; 122 A.L.R. 769 (1939).
242 A.2d at 878.
The court in Cuprowski quoted the following language from State ex. relKeefe v. St. Petersburg:
 It would be unreasonable, indeed, to suppose that the Legislature would require the responsible officials of the city to proceed with care and deliberation to prepare a budget in keeping with the financial needs of the city, and then subject the resultant financial arrangement evolved therefrom to a popular referendum election, in which few, if any, of the special factors, which have been studied by competent officials in connection with preparing such an arrangement, would be given that thorough investigation and consideration necessary to make any form of budgetary plan operative. . . .
Id. at 878 (quoting State ex re. Keefe v. St. Petersburg, supra,
145 So. at 176).
The Cuprowski court thus concluded:
 The consensus of judicial opinions throughout the land is that the preparation, approval and adoption of a municipal budget is administrative in character. To permit the electorate to veto a city budget affecting the fiscal affairs of the city could cause a chaotic situation.
Id. at 880.
The concerns expressed by the Cuprowski court are consistent, in my opinion, with the ones expressed in the Arkansas case of Greenlee v.Munn, supra, wherein it was stated:
 Certainly, the people, in adopting Amendment 7 and making it applicable to municipalities did not intend that it be so broad in scope as to frustrate administrative action essential to efficient administration of the city's affairs, by annulment or delay of executive conduct, even by ordinance, a hazard pointed out in the statement of the test by McQuillin, which was quoted in Scroggins.
262 Ark. at 668.
It is my opinion, in light of all the foregoing, that Ordinance 96-11, adopted by the City of Oppelo, embodies an administrative or executive action which is not subject to the power of referendum.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] It is my understanding that the City of Oppelo is a city of the second class with the mayor-council form of government.
[2] I do not mean to suggest that appropriation ordinances in general are immune from the people's power of referendum under Amendment 7. In fact, that Amendment, in delineating the right of state electors to refer measures, indicates that the referendum may be invoked against "any item
of an appropriation bill." Arkansas Constitution, Amendment 7
("Referendum") (emphasis added). Apparently, the laws of some states preclude a referendum on any appropriation measure. (See 122 A.L.R. 769 (1939)). This does not appear to be the law of Arkansas. See Cochran v.Black, 240 Ark. 393, 400 S.W.2d 280 (1966). In my opinion it still must be shown in each instance, however, that the appropriation ordinance sought to be referred is "legislative" in character, rather than administrative. It is my opinion that the adoption of the entire budget of a municipality would be held by a court to be administrative rather than legislative.
[3] Keigley v. Bench was cited with approval in the Arkansas case ofScroggins, supra.