71 A.3d 905

HARVEY S. ROSEFF, JOANN SMITH, EUGENIA C. MORAN, MERWYN LEE AND NELSON A. DROBNESS, PLAINTIFFS–APPELLANTS, v. BYRAM TOWNSHIP, THE GOVERNING BODY OF THE TOWNSHIP OF BYRAM AND DORIS FLYNN IN HER CAPACITY AS THE BYRAM TOWNSHIP CLERK, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted April 24, 2013—Decided July 10, 2013.

Before Judges GRALL, KOBLITZ and ACCURSO.

*Harvey S. Roseff, Joann Smith, Eugenie C. Moran, Merwyn Lee* and *Nelson A. Drobness,* appellants pro se.

*Vogel, Chait, Collins & Schneider,* attorneys for respondents (*Thomas F. Collins, Jr., David H. Soloway* and *Thomas J. Molica, Jr.,* on the brief).

*Matthew Weng,* attorney for amicus curiae New Jersey State League of Municipalities.[1]

The opinion of the court was delivered by

GRALL, J.A.D.

Through the Local Budget Law, *N.J.S.A.* 40A:4–1 to –89, the Legislature presently limits increases in municipal budgets by more than 2.5% of the previous year's final appropriations or the cost-of-living adjustment, whichever is less. *N.J.S.A.* 40A:4–45.3. There are, however, several exceptions. Pertinent to this case, the Legislature has authorized a municipality to increase its budget by as much as, but no more than, 3.5% in any year in which the cost-of-living adjustment is equal to or less than 2.5%. *N.J.S.A.* 40A:4–45.14.

---

[1] On January 11, 2013, this court granted the New Jersey State League of Municipalities leave to appear as amicus curiae.

The question presented in this case is whether an ordinance authorized by *N.J.S.A.* 40A:4–45.14 is subject to a referendum authorized by *N.J.S.A.* 40:69A–185, a provision of the Optional Municipal Charter Law commonly known as the Faulkner Act, *N.J.S.A.* 40:69A–1 to –210. Because the Legislature "has made clear its intention to carve out of the democratic processes provided in the Faulkner Act," *In re Petition for Referendum on City of Trenton Ordinance 09–02*, 201 *N.J.* 349, 362, 990 *A.*2d 1109 (2010), ordinances adopted pursuant to *N.J.S.A.* 40A:4–45.14 by providing that they "shall take effect immediately upon adoption," we conclude that a protest referendum is barred. *N.J.S.A.* 40A:4–45.14(c).

The predicate facts are undisputed.[2] In conformity with *N.J.S.A.* 40A:4–45.14, on February 7, 2012, the Township of Byram, which is subject to the Faulkner Act, adopted Ordinance No. 1–2012. That ordinance increases the Township's budget by up to 3.5% over its previous year's final appropriations. On the twentieth day following its adoption, plaintiffs, five residents of the Township of Byram, filed a petition for a referendum on the ordinance, which fully conformed with the procedural requirements of the Faulkner Act. Nevertheless, based on an opinion of the Township's attorney indicating that the ordinance was not subject to referendum, the Mayor and Council adopted a resolution rejecting the petition on March 20, 2012, and at the same meeting declined to reconsider the ordinance. Five days later, plaintiffs filed a complaint seeking an order directing the Township to accept their petition and either repeal the ordinance or hold a referendum in accordance with the Faulkner Act.

The trial court concluded that the ordinance was not subject to referendum pursuant to *N.J.S.A.* 40:69A–185 and, for that reason, dismissed the complaint. This appeal followed.

---

2 Plaintiffs do not argue that the ordinance was adopted in violation of *N.J.S.A.* 40A:4–45.14, and defendants acknowledge that plaintiffs' petition conformed with the requirements of the Faulkner Act.

The question presented—whether an ordinance adopted pursuant to *N.J.S.A.* 40A:4–45.14 is subject to repeal by referendum pursuant to *N.J.S.A.* 40:69A–185—is one of statutory interpretation, requiring de novo review designed to " 'determine and effectuate the Legislature's intent.' " *In re Ordinance 09–02, supra,* 201 *N.J.* at 358, 990 *A.*2d 1109 (quoting *Bosland v. Warnock Dodge Inc.,* 197 *N.J.* 543, 553, 964 *A.*2d 741 (2009)). A court's inquiry into legislative intent follows well-established guidelines that the Supreme Court reiterated in its most recent decision discussing the scope of referenda under the Faulkner Act and municipal action authorized by *N.J.S.A.* 40:62–3.1, a provision of the Municipal Utilities Law, *N.J.S.A.* 40:62–1 to –151. *Id.* at 358–60, 990 *A.*2d 1109. Our courts start with " 'the plain language of the statute,' " *id.* at 358–59, 990 *A.*2d 1109 (quoting *Bosland, supra,* 197 *N.J.* at 553, 964 *A.*2d 741); presume that the Legislature is " 'familiar with its own enactments, [and] with judicial declarations relating to them,' " *id.* at 359, 964 *A.*2d 741 (quoting *State v. Federanko,* 26 *N.J.* 119, 129, 139 *A.*2d 30 (1958)); read related statutes as a whole, *ibid.;* and reconcile separate enactments to give effect to both, *ibid.*

Applying those principles, the Court has interpreted the scope of the protest referendum the Legislature provided in the Faulkner Act in two recent cases—*In re Ordinance 09–02* and *In re Referendum Petition to Repeal Ordinance 04–75,* 192 *N.J.* 446, 931 *A.*2d 595 (2007). The pertinent statute, *N.J.S.A.* 40:69A–185, begins with a broad grant: "The voters shall also have the power of referendum which is the power to approve or reject at the polls any ordinance submitted by the council to the voters or *any ordinance* passed by the council, against which a referendum petition has been filed as herein provided." (Emphasis added). The Court has held that *any ordinance* means *all ordinances* except those "where the Legislature has made clear its intention to carve out of the democratic processes provided in the Faulkner Act a particular type of ordinance. . . ." *In re Ordinance 09–02, supra,* 201 *N.J.* at 362, 990 *A.*2d 1109; *accord In re Ordinance 04–*

*75, supra,* 192 *N.J.* at 461–64, 466–68, 931 *A.*2d 595. As the Township is the party urging us to conclude that the Legislature intended to carve out ordinances adopted pursuant to *N.J.S.A.* 40A:4–45.14, it has the burden of proof. *In re Ordinance 09–02, supra,* 201 *N.J.* at 362, 990 *A.*2d 1109.

██ In both recent cases, the Court concluded that the voters were entitled to a referendum because neither the text of the statute authorizing the municipal action nor its legislative history or statutory scheme clearly demonstrated the Legislature's intention to preclude a protest by referendum. *Id.* at 364–68, 990 *A.*2d 1109; *In re Ordinance 04–75, supra,* 192 *N.J.* at 467–70, 931 *A.*2d 595. Moreover, in *In re Ordinance 04–75,* the Court disapproved and prohibited our courts from creating exemptions to referendum based on judicially-crafted distinctions between administrative and legislative ordinances or a court's view of public policy. 192 *N.J.* at 469–70, 931 *A.*2d 595. The Court also prohibited reliance on a distinction based on whether the authorizing statute granted discretion to adopt or mandated adoption of the ordinance, except to recognize that a referendum cannot override a statute requiring a municipality to adopt an ordinance or mandating its terms. *Ibid.* Read together, the Court's recent decisions make it clear that a court's role is limited to determining whether the Legislature's intention to exempt an ordinance authorized by *N.J.S.A.* 40A:4–45.14 from referendum is indicated by the authorizing "statute's text, legislative history or place in the larger statutory scheme." *Id.* at 467, 931 *A.*2d 595.

██ The Legislature has clearly indicated its intention to exempt ordinances adopted pursuant to *N.J.S.A.* 40A:4–45.14 from a protest referendum under the Faulkner Act. That intention is manifest in the terms of *N.J.S.A.* 40:69A–185 and *N.J.S.A.* 40A:4–45.14 and consistent with the legislative history and the statutory schemes.

In part most pertinent here, *N.J.S.A.* 40:69A–185 provides:

The voters shall also have the power of referendum which is the power to approve or reject at the polls any ordinance submitted by the council to the voters

or any ordinance passed by the council, against which a referendum petition has been filed as herein provided. *No ordinance passed by the municipal council, except when otherwise required by general law or permitted by the provisions of [ N.J.S.A. 40:69A–181(b) ] shall take effect before twenty days from the time of its final passage* and its approval by the mayor where such approval is required. *If within twenty days after such final passage and approval of such ordinance a petition protesting against the passage of such ordinance shall be filed with the municipal clerk* and if the petition shall be signed by a number of the legal voters of the municipality equal in number to at least 15% of the total votes cast in the municipality at the last election at which members of the General Assembly were elected, *the ordinance shall be suspended from taking effect until proceedings are had as herein provided.*

[ (Emphasis added).]

The congruent twenty-day periods following adoption of an ordinance, during which the effect of an ordinance generally is held in abeyance and a petition protesting its adoption must be filed, are intended to work together. Pursuant to *N.J.S.A.* 40:69A–185, an ordinance does not take effect until the time for filing a referendum petition has expired; if a petition for a referendum conforming with the Faulkner Act is filed within that period, the effective date of the ordinance is suspended until proceedings on the petition under the Faulkner Act are complete. The apparent purpose is to allow a referendum to proceed before the statute takes effect.

The essential relationship between the delayed effective date and the time for filing a referendum petition is further demonstrated by the fact that rules governing effective dates of ordinances are stated elsewhere. *See N.J.S.A.* 40:69A–181. Subsection (b) of *N.J.S.A.* 40:69A–181 provides:

No ordinance other than the local budget ordinance shall take effect less than twenty days after its final passage by council and approval by the mayor where such approval is required, unless the council shall adopt a resolution declaring an emergency and at least two-thirds of all the members of the council vote in favor of such resolution.

Because the general rule for the effective date of ordinances and the exception for budget ordinances is already stated in *N.J.S.A.* 40:69A–181, there is no discernible reason for the Legislature to refer to it in the referendum statute, *N.J.S.A.* 40:69A–185, other

than to establish the nexus between the delayed effective date of ordinances and the referendum power.

In *Cuprowski v. City of Jersey City*, 101 *N.J.Super.* 15, 21, 242 *A.*2d 873 (Law Div.), *aff'd o.b.*, 103 *N.J.Super.* 217, 247 *A.*2d 28 (App.Div.), *certif. denied*, 51 *N.J.* 568, 242 *A.*2d 374 (1968), this court has relied on these congruent twenty-day periods. We affirmed the trial court's holding that the Legislature intended to preclude a protest referendum pursuant to *N.J.S.A.* 40:69A–185 on a budget ordinance because the court relied on the fact that the Legislature provided for a budget ordinance to take effect immediately. *Ibid.* In *Cuprowski*, the trial court supported its determination not only with its reliance on the twenty-day periods, but also with other lines of reasoning. *Id.* at 21–28, 242 *A.*2d 873. In subsequent cases, this court followed *Cuprowski*'s alternative reasoning, but the Supreme Court has since disapproved it. *See In re Ordinance 04–75, supra*, 192 *N.J.* at 456–70, 931 *A.*2d 595 (disapproving of *Cuprowski*'s legislative/administrative distinction and discussing cases in which this court applied it).

Despite the Court's disagreement with some of the reasoning in *Cuprowski*, the Court has approved *Cuprowski*'s reasoning based on the text of the statute—that by providing for budget ordinances to take immediate effect the Legislature expressed its intent to insulate those ordinances from a protest referendum. The Court stated:

> [T]he Law Division concluded [in *Cuprowski*] that the Legislature did not intend for budgets in Faulkner Act municipalities to be subject to referendum. The Law Division reached that conclusion because local budget ordinances take effect immediately, unlike other ordinances, which are held in abeyance for twenty days. If a referendum petition is properly filed with the city clerk during that twenty-day waiting period, an ordinance other than a budget ordinance is suspended until a referendum vote. From that premise, the Law Division maintained that it "must be assumed that the Legislature excluded the budget from recall because it becomes effective immediately upon adoption."
>
> *Having decided on that basis that local budgets are not subject to referendum, the court could have stopped there.*
>
> [*Id.* at 462, 931 *A.*2d 595 (emphasis added) (citations omitted).]

Focusing on the clause in *N.J.S.A.* 40:69A–185 referencing *N.J.S.A.* 40:69A–181(b), which provides an immediate effective

date for a budget ordinance, the Court concluded that "the text of *N.J.S.A.* 40:69A–185 contains at least a partial, if not total, exception to the referendum rule for municipal budgets." *Id.* at 465, 931 *A.*2d 595. The Court explained that with this clause, the Legislature "exempted local budget ordinances from this twenty-day waiting period, signifying that ... a budget ordinance cannot be suspended." *Ibid.* The Court then quoted a passage from *Cuprowski* stating that as a consequence of the immediate effective date for budget ordinances and its prohibition against suspension of those ordinances it " 'must be assumed that the Legislature excluded the budget from recall because it becomes effective immediately upon adoption.' " *Id.* at 465–66, 931 *A.*2d 595 (quoting *Cuprowski, supra,* 101 *N.J.Super.* at 21, 242 *A.*2d 873).

The Court stressed that the point of its discussion of this part of *Cuprowski*'s reasoning was to demonstrate "that the Legislature knew precisely how to exclude particular ordinances from the purview of the referendum statute when it wished to do so." *Id.* at 466, 931 *A.*2d 595. That rule applies here because the statute authorizing municipalities to adopt ordinances increasing appropriations by 3.5% provides for such ordinances "to take effect immediately upon adoption." *N.J.S.A.* 40A:4–45.14(c).

In part pertinent here, *N.J.S.A.* 40A:4–45.14 states:

b.  Notwithstanding the provisions of [*N.J.S.A.* 40A:4–45.2, –45.3 or –45.4] to the contrary, in any year in which the cost-of-living adjustment is equal to or less than 2.5% a municipality may, by ordinance approved by a majority vote of the full membership of the governing body, provide that in the local fiscal year to which the ordinance applies, the final appropriations of the municipality shall be increased by a percentage rate greater than the cost-of-living adjustment, but not to exceed 3.5% over the previous year's final appropriations.

c.  ... *An ordinance or resolution so adopted shall, notwithstanding any other provision of law, take effect immediately upon adoption.*

. . . .

[ (Emphasis added).]

Here, the Legislature has expressed its intention to exempt the budget-related ordinances authorized by *N.J.S.A.* 40A:4–45.14 with the same clarity as it did when it carved out the budget ordinance from the protest referendum of *N.J.S.A.* 40:69A–185.

Based on *Cuprowski*'s analysis of the significance of a statute providing for ordinances to take immediate effect for a Faulkner Act referendum, and the Court's statements in *In re Ordinance 04–75* approving that reasoning, we could end the inquiry here. *See In re Ordinance 04–75, supra,* 192 *N.J.* at 462, 931 *A.*2d 595.

■ To the extent plaintiffs rely on the fact that *N.J.S.A.* 40A:4–45.14 is discretionary in that it does not mandate the adoption of the ordinances it authorizes, this distinction does not change the analysis here. As noted above, the Supreme Court has explained that when the Legislature mandates adoption of a specific ordinance or inclusion of specific terms in an ordinance, that action is relevant only to the extent that a referendum to alter what is required by the statute is prohibited. *Id.* at 469, 931 *A.*2d 595. Where the statute simply authorizes but does not compel adoption of an ordinance or inclusion of specific terms, the grant of discretion does not tilt the balance in favor of or against a protest referendum under the Faulkner Act.

Although the Legislature's decision to give all ordinances adopted pursuant to *N.J.S.A.* 40A:4–45.14 immediate effect could end the inquiry, it is worth noting that nothing in the history or structure of the Faulkner Act or the Local Budget Law suggests that the Legislature did not intend to insulate these ordinances from a referendum under the Faulkner Act. The Legislature first enacted the Budget Cap Law in 1976 in order to control "the spiraling costs of local government" and thereby "protect the homeowners of the State and enable them to maintain their homesteads." *L.* 1976, *c.* 68, § 1. "At the same time[,] the Legislature recognize[d] that local government cannot be constrained to the point that it is impossible to provide necessary services to its residents." *Ibid.* The Legislature acknowledged that these "two concepts may be at cross purposes," and therefore initially enacted the Budget Cap Law, now a permanent feature of the Local Budget Law, on an experimental basis with review. *Ibid.*

In order to achieve its cross purposes, the Legislature initially capped the amount by which a municipality could exceed its previous year's budget appropriations, while allowing the municipality to exceed that cap under certain enumerated circumstances. *N.J.S.A.* 40A:4–45.2, –45.3. Plaintiffs focus on an exception applicable "when [an amount exceeding the cap is] approved by referendum." *L.* 1976, *c.* 68, § 3i; *see N.J.S.A.* 40A:4–45.3(i) (now listing among the exceptions to the statutory budget cap "[a]ny amount approved by referendum").

The referendum provision in subsection (i) of *N.J.S.A.* 40A:4–45.3 does not detract from the clarity of the exemption from the protest referendum the Legislature affected by providing for ordinances adopted pursuant to *N.J.S.A.* 40A:4–45.14 to take effect immediately. Indeed, because the Faulkner Act itself exempts a "local budget ordinance" through its reference to the immediate effective date specified in *N.J.S.A.* 40:69A–181, *N.J.S.A.* 40A:4–45.14, which has the same effect, is consistent, not in conflict with, the Faulkner Act.

This court discussed the relationship between *N.J.S.A.* 40A:4–45.14 and the referendum provision of *N.J.S.A.* 40A:4–45.3(i) in *City of Ocean City v. Somerville,* 403 *N.J.Super.* 345, 365, 958 *A.*2d 465 (App.Div.2008). Judge Parrillo observed that *N.J.S.A.* 40A:4–45.14 permits a municipality to exceed the budget cap by 1%, but a municipality can go beyond that 1% "only by way of referendum." *Somerville, supra,* 403 *N.J.Super.* at 365, 958 *A.*2d 465. So understood, the two provisions strike a different balance with respect to voter participation and the competing interests implicated by budget caps—one focused on the amount involved. Thus, the Legislature decided to shield 1% increases from referendum by having the statute take immediate effect, but to require voter approval for increases greater than 1%. In our view, the resulting difference in levels of voter participation cannot be viewed as in conflict with one another because they serve to provide different levels of voter participation for different levels of increased spending.

The history of amendments to the statutes addressing budget caps further supports our conclusion that the Legislature intended to insulate ordinances adopted pursuant to *N.J.S.A.* 40A:4–45.14 from protest referendum under the Faulkner Act. In 1983, the Legislature acknowledged that the 5% cap it adopted in 1976 was controlling municipal spending, but recognized that it was falling short of its goal of allowing local government to provide necessary services to its residents. *L.* 1983, *c.* 49, § 1. The Legislature explained, "a uniform fixed percentage limitation on increases in expenditures has not adequately reflected either national economic trends or the differing needs of the various local governments of the State. As a result, local governments have been unevenly affected in their ability to provide necessary services to their residents." *Ibid.* The Legislature therefore determined that, in order to balance its cross purposes, the Budget Cap Law

> require[d] adjustment to provide for an annually variable percentage limitation which more accurately reflects annual nationwide increases in the basic cost of governmental operations, [and] to provide a mechanism whereby local officials and taxpayers can examine the particular needs of their community and determine whether or not the use of this limitation more nearly addresses those needs.... [*Ibid.*]

In furtherance of that goal, the Legislature added a variable limitation—formerly known as the index rate and now labeled a cost-of-living adjustment—to the budget cap. The Legislature then amended *N.J.S.A.* 40A:4–45.3a to require a municipality to "limit an increase" in its budget to "5% *or* the index rate, whichever is less." *L.* 1983, *c.* 49, § 5 (emphasis added). In addition to that reform, the Legislature enacted the statute at issue here, *N.J.S.A.* 40A:4–45.14. In doing so, the Legislature made it applicable notwithstanding the provisions of *N.J.S.A.* 40A:4–45.2, –45.3 or –45.4. *L.* 1983, *c.* 49, § 7. As first enacted, it authorized a municipality to adopt by ordinance an increase in its appropriations for that year by a percentage rate greater than 5%, but not to exceed the index rate. *Ibid.* And the Legislature provided for such an ordinance to "take effect immediately upon adoption," while retaining the exemption for greater increases approved by referendum in *N.J.S.A.* 40A:4–45.3(i). *Ibid.*

Although *N.J.S.A.* 40A:4–45.14 has been amended five times since its enactment in 1983, the Legislature has not changed its decision to have the ordinances it authorizes take effect immediately upon adoption. *See L.* 1983, *c.* 312, § 1; *L.* 1986, *c.* 203, § 1; *L.* 1987, *c.* 74, § 6; *L.* 1991, *c.* 75, § 22; *L.* 2004, *c.* 74, § 8. Throughout, the Legislature has left the immediate effective date provision intact, despite the fact that *Cuprowski,* which clearly indicates the significance for referendum when a statute provides for an ordinance to take immediate effect, was decided in 1968, eight years before this statute was first enacted. Under the well-settled rules guiding statutory interpretation, this chain of events gives rise to a presumption that the Legislature was aware of *Cuprowski* and provided for these ordinances to take immediate effect intending to shield them from the referendum procedures of the Faulkner Act.

There is one additional paragraph of *N.J.S.A.* 40A:4–45.14, which we omitted when setting forth only the portion of the statute pertinent to our discussion at that point. An undesignated final paragraph of *N.J.S.A.* 40A:4–45.14 refers to referenda. It provides:

> In any year for which an ordinance is adopted by a municipality pursuant to this section, no referendum shall be held in that municipality pursuant to subsection i. of [*N.J.S.A.* 40A:4–45.3]; provided that a municipality may hold a special election if required by law pursuant to that subsection.
>
> [*N.J.S.A.* 40A:4–45.14.]

The reference to the exemption for budget increases authorized in *N.J.S.A.* 40A:4–45.3(i) for amounts approved by referenda sheds no light on our analysis of the question presented. First, *N.J.S.A.* 40A:4–45.14 expressly provides that it applies notwithstanding *N.J.S.A.* 40A:4–45.3. Thus, this statute cannot be understood to be modified by subsection (i) of *N.J.S.A.* 40A:4–45.3. Second, and more importantly, like the provisions of the Municipal Utility Law addressed in *In re Ordinance 09–02,* this paragraph addressing specific referenda is silent on the question of whether the Legislature intended to preclude a referendum authorized by *N.J.S.A.* 40:69A–185. In *In re Ordinance 09–02,* the Court held that

silence is insufficient to demonstrate a clear intention to exempt ordinances from a protest referendum under the Faulkner Act. 201 *N.J.* at 366, 990 *A.*2d 1109. Consequently, our determination that the immediate effective date specified in *N.J.S.A.* 40A:4–45.14(c) for all ordinances adopted pursuant to that statute establishes the Legislature's intention to exempt those ordinances in no way depends on the paragraph quoted above. That paragraph does nothing more than preclude a referendum authorized under *N.J.S.A.* 40A:4–45.3 during the year in which a municipality adopts an ordinance authorized by *N.J.S.A.* 40A:4–45.14.

The reference to a "special election" in the paragraph of *N.J.S.A.* 40A:4–45.14 quoted above has nothing to do with a referendum under the Faulkner Act. The origin of this language suggests a different purpose. In 1987, the Legislature amended subsection (i) of *N.J.S.A.* 40A:4–45.3 to exempt from the cap it provided not only any amount approved by referendum but also "any amount expended to conduct a special election required by law to be held at a time other than the general election or regular municipal elections, as appropriate." *L.* 1987, *c.* 74, § 2. At the same time, this undesignated final paragraph of *N.J.S.A.* 40A:4–45.14 was amended to include a reference to special elections required by law pursuant to subsection (i) of *N.J.S.A.* 40A:4–45.3. When the Legislature removed the exemption for amounts expended on special elections from subsection (i) of *N.J.S.A.* 40A:4–45.3 in 1990, *L.* 1990, *c.* 89, § 2, it did not amend *N.J.S.A.* 40A:4–45.14.

In light of this legislative history, the special election language left in *N.J.S.A.* 40A:4–45.14 has no discernible relevance to referendum under the Faulkner Act. Indeed, it has no discernible meaning at all because subsection (i) of *N.J.S.A.* 40A:4–45.3 no longer addresses special elections.

For all of the foregoing reasons, we conclude that the trial court properly dismissed plaintiffs' complaint seeking to compel a referendum on this ordinance. Plaintiffs have also challenged the manner in which the Township's officers rejected their petition for

a referendum. Because we conclude that the ordinance was not subject to a referendum, there is no reason to address this claim.

Affirmed.